Argued and submitted June 23,
reversed and remanded November 17, 1980,
reconsideration denied January 29,
petition for review allowed March 31, 1981
See later issue Oregon Reports

STATE OF OREGON,
*Appellant,*

*v.*

PATRICIA ANN NEWMAN,
*Respondent.*

(No. C 79-10-33601, CA 16600)

619 P2d 930

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Nancy Walseth, Portland, argued the cause for respondent. On the brief were Richard A. Van Hoomissen and Cooney & Van Hoomissen, Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

### WARREN, J.

Pursuant to ORS 138.060(3), the state appeals the trial court's pretrial order suppressing evidence obtained through a warrantless search of defendant's purse. The state contends that the search, undertaken by a police officer to ascertain defendant's identity, was reasonable under the circumstances. We reverse and remand.

The only testimony at the hearing on the motion to suppress was that of Officer Pacheco, a police officer for the city of Portland. He testified that at about 5:30 a.m. on October 13, 1979, while on patrol, he saw a car parked in a posted no parking area in the 5200 block of Southeast McLoughlin. He noticed that the two tires on the left side of the car were flat, and that a woman, defendant here, was sitting in the driver's seat with her head leaning against the window. Officer Pacheco parked his patrol car behind defendant's car and approached it to find out if the woman was sick or hurt. He knocked on the window several times and, receiving no response, he opened the driver's door and shook the woman until she awakened. In response to the officer's question, defendant answered that she was 22 years old. When Officer Pacheco asked for identification, defendant said that she wanted to go home. She repeated this statement several times, ignoring the officer's continued requests for identification. Officer Pacheco smelled a moderate amount of alcohol on defendant's breath and assumed she was intoxicated. Finally, defendant reached into her purse and gave the officer a driver's license with the name "Catherine Newman" which identified the holder as 22 years old. Officer Pacheco then asked defendant for a phone number to call, which defendant eventually supplied. When this number was contacted, the person answering stated that he had never heard of Catherine Newman or anyone by the name of Newman.

During this time, Officer Pacheco had developed serious doubts as to whether the young woman was "Catherine Newman." She did not react to the name "Catherine," appeared to the officer to be younger than her claimed 22 years, and, in the officer's opinion, did not appear to be the person whose picture was on the driver's license. Defendant refused to give the officer her parents'

telephone number, stating, "Well, take me wherever you want, but don't call my parents." A second officer handcuffed defendant and placed her in the back seat of the patrol car. Officer Pacheco testified that at this point he intended to place defendant in a "civil hold" and did not intend to charge defendant with violating any laws. Officer Pacheco then went to defendant's car and saw defendant's purse on the ground next to the car. He testified that the purse was closed and that he could not see into it. He opened the purse for the sole purpose of finding a driver's license or other reliable source of identification. Upon opening the purse he saw a plastic bag with white crosstop pills. He also found an amber glass filled with pills, some other pills on the bottom of the purse, and a wallet containing a driver's license for "Patricia Ann Newman." In the officer's opinion, the photograph on the driver's license resembled defendant more than did the photograph on the driver's license for Catherine Newman. The driver's license stated the birth date of Patricia Ann Newman was July 14, 1960, making her approximately 19 years and three months of age at the time. Officer Pacheco testified that that age was more consistent with defendant's appearance.

After finding the pills and the driver's license, Officer Pacheco walked back to his patrol car and read defendant her *Miranda*[1] rights. He asked defendant what the pills were doing there, and she said they were "speed." When she was confronted with the newly found driver's license, defendant admitted that she was Patricia Ann Newman.

Defendant was charged with possession of a controlled substance, ORS 475.992, and misuse of a driver's license, ORS 482.610. Following the suppression hearing, the trial court entered an order suppressing all evidence obtained through the warrantless search of defendant's purse. The state declined to proceed to trial and the court granted defendant's motion to dismiss both charges. The issue here is the validity of the "search."

■     A fundamental difficulty arises in attempting to apply the warrant requirement to the present search. In

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

both Article I, Section 9 of the Oregon Constitution and the Fourth Amendment to the United States Constitution, the warrant requirement is "linked * * * textually" to the requirement that probable cause exist to search for evidence of crime. *South Dakota v. Opperman,* 428 US 364, 96 S Ct 3092, 49 L Ed 2d 1000, 1006 n 5 (1976). Discussing the warrant requirement in the context of routine inventory searches of automobiles impounded by police, the United States Supreme Court stated:

" * * * The standard of probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures. [reference omitted] The probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly when no claim is made that the protective procedures are a subterfuge for criminal investigations.

"In view of the noncriminal context of inventory searches, and the inapplicability in such a setting of the requirement of probable cause, courts have held—and quite correctly—that search warrants are not required, linked as the warrant requirement textually is to the probable-cause concept. We have frequently observed that the warrant requirement assures that legal inferences and conclusions as to probable cause will be drawn by a neutral magistrate, unrelated to the criminal investigative-enforcement process. With respect to noninvestigative police inventories of automobiles lawfully within governmental custody, however, the policies underlying the warrant requirement * * * are inapplicable." 49 L Ed 2d at 1006 n 5.

This reasoning is equally valid here. A search by an officer for identification of an intoxicated person in order to take action authorized under ORS 426.460 is not a search for evidence of a crime and the concept of probable cause is meaningless. Defendant does not suggest that the officer's action in opening the purse to search for identification was a subterfuge for a criminal investigation for contraband. Hence, no probable cause was necessary and the warrant requirement is inapplicable. Our analysis must center on the reasonableness of the search under the circumstances.

In *State v. Tourtillott,* 289 Or 845, 618 P2d 423 (1980), defendant was stopped at a police road-block set up by the Oregon State Police Game Division on a

rural road for the purpose of checking compliance with game laws, hunting licenses, and deer hunters' success for statistical purposes. When defendant was stopped and asked for her driver's license, she admitted that she was driving her vehicle while suspended. In affirming her conviction for driving with a revoked license, the Supreme Court noted:

"In its most recent 'roving-stop' case, *Delaware v. Prouse, [440 US 648, 99 S Ct 1391, 59 L Ed 2d 660],* the Supreme Court balanced the intrusion on the individual's Fourth Amendment interests against the law enforcement activity's promotion of legitimate governmental interests. 440 US at 653-54. In doing so, the Court stated that the standard of 'reasonableness' was imposed 'upon the exercise of discretion by government officials, including law-enforcement agents.' *Id.* The balance test required by the Supreme Court binds us, as well, for the Fourteenth Amendment makes the Fourth Amendment applicable to the states.

"The test is easily articulated. In determining the constitutionality of a particular government procedure, the promotion of the legitimate government interest at stake is balanced against the individual's right to have his or her privacy and personal security be free from arbitrary and oppressive interference. The Court has considered the following factors to be important:

"(1)  the importance of the governmental interest at stake:

"(2)  the psychologically and physically intrusive nature of the procedure;

"(3)  the efficiency of the procedure in reaching its desired goals; and

"(4)  the degree of discretion the procedure vests in the individual officers.

" * * * * *

"The Fourth Amendment prohibits unreasonable seizures. Since the key test is reasonableness, the balancing test adopted by the Supreme Court is uniquely adapted to make that determination. The facts and circumstances of each type of seizure must be balanced in determining its permissibility." 289 Or 845 at 864-65.

The state argues that we should hold the search valid under the rationale of *United States v. Haley,* 581 F2d 723 (8th Cir), *cert denied,* 439 US 1005, 99 S Ct 618, 58 L Ed 2d 681 (1978). In *Haley,* an officer responding to a report of

a traffic accident, and while blocks away from the reported accident site, found a man lying in the street and a car parked at the curb nearby with damage to the rear. The officer stopped to check the man's condition. He roused the man for a short time, during which the man indicated he was not hurt and that his name was Sam Haley. The officer found no indication that Haley was under the influence of alcohol. Attempting to verify the identity of Haley and the ownership of the parked car, the officer looked inside a zippered briefcase he found in the middle of the front seat of the car. He found identification for Sam Haley, and also a firearm. In the subsequent prosecution for illegal possession of a firearm, the court upheld the search of the briefcase against the defendant's challenge. The court ruled that the briefcase was "luggage" due the protections of the *Chadwick* warrant requirement. Nonetheless, the warrantless search was held to be justified by the exigent circumstances presented by the apparent medical emergency:

"In this case, Officer Deal was presented with an emergency situation when he observed Haley lying on the street, and he reasonably believed that Haley was in need of immediate assistance. Haley's lapse from consciousness did not appear to be attributable to alcohol and Haley indicated he wasn't hurt. It was, thus, reasonable for the officer to seek identification or medical alert cards which might be of assistance." 581 F2d at 726.

Cases in a number of jurisdictions, including Oregon, recognize the authority of a police officer to make a warrantless search in an attempt to render emergency assistance to a person the officer reasonably believes to be in need of such assistance: *See, e.g., State v. Plant,* 28 Or App 771, 773 and n 2, 561 P2d 647 (1977). In *Mincey v. Arizona,* 437 US 385, 98 S Ct 2408, 57 L Ed 2d 290 (1978), the United States Supreme Court stated:

"'* * * We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. * * * 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' Wayne v. United States, 115 US App DC 234,

241, 318 F2d 205, 212 (opinion of Burger, J.) And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. Michigan v. Tyler, [436 US 499, 509-10, 98 S Ct 1942, 56 L Ed 2d 486]; Coolidge v. New Hampshire, 403 US, at 465-466, 29 L Ed 2d 564, 91 S Ct 2022.

"But a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.' Terry v. Ohio, 392 US, at 25-26, 20 L Ed 2d 889, 88 S Ct 1868, 44 Ohio Ops 2d 383 * * *." 57 L Ed 2d at 300.

Many cases have upheld searches by police of persons who were found seriously injured or unconscious, in order to find identification, medical alert cards, or the names of persons to call in an emergency. *See, e.g., Vauss v. United States,* 370 F2d 250 (DC Cir 1966); *People v. Gonzales,* 182 Cal App 2d 276, 5 Cal Rptr 920 (1960); *People v. Smith,* 47 Ill 2d 161, 265 NE 2d 139 (1970); *People v. Smith,* 44 Ill 2d 82, 254 NE2d 492 (1969); *Floyd v. State,* 24 Md App 363, 330 A2d 677 (1975); *State v. Miller,* 486 SW 2d 435 (Mo 1972); *Perez v. State,* 514 SW2d 748 (Tex Crim App 1974). As in *United States v. Haley, supra,* justification for the search was found in the exigency created by the medical emergency.

■ In contrast to these cases, the facts here did not present Officer Pacheco with a medical emergency justifying an immediate search. There is no indication that the officer suspected that defendant was suffering from anything more serious than ordinary alcohol intoxication. Thus, the search cannot be sustained on the basis of cases applying the "medical emergency" exception to the warrant requirement.

■ In sum, neither of the parties has referred us to any cases dispositive of the issue before the court. Upon examining the facts and circumstances of the case, however, we conclude that the officer acted reasonably in opening defendant's purse to look for identification. Among Officer Pacheco's options upon finding defendant intoxicated were taking or sending defendant home or to a treatment facility, *see* ORS 426.460(1), or taking defendant to jail until she was no longer intoxicated. *See* ORS 426.460(3). In order to take or send defendant home, the officer needed to know defendant's home address or the name and number of

someone to call. Since defendant had been uncooperative in supplying Officer Pacheco with this information, the most likely source of identification was defendant's purse. As stated above, defendant does not contend that the need for identification was a pretext for a general search of defendant's car and belongings for evidence of a crime.

We believe that the discretion vested in police officers under ORS 426.460(1) to take intoxicated persons home rather than to jail in appropriate cases implies a significant governmental interest in the safety and well-being of the citizenry. We do not believe that defendant's lack of cooperation in identifying herself required the officers here to adopt a harsher posture toward her than that which they intended to adopt when they placed her on a civil hold. The search of defendant's purse for identification was neither physically nor psychologically intrusive and was, under the circumstances of this case, the most efficient means of ascertaining her identity. *State v. Tourtillott, supra,* 289 Or at 20.

■ Based upon the foregoing, we hold that the officer's minimal intrusion upon defendant's privacy and personal security when he opened defendant's purse to search for identification was not unreasonable when balanced against the legitimate governmental interest to be served by the intrusion. Since the controlled substance the officer found immediately upon opening the purse was in plain view, the seizure of that substance was lawful. Accordingly, we hold that the trial court erred in ordering the evidence seized in the search of defendant's purse suppressed.

Reversed and remanded.