Argued and submitted August 4, 1983, affirmed January 4, reconsideration denied February 10, petition for review allowed March 6, 1984 (296 Or 536)
See 298 Or 21, 688 P2d 827 (1984)

## STATE OF OREGON,
*Respondent,*

*v.*

## LEROY JAMES PERRY,
*Appellant.*

(J82-2628; CA A26974)

674 P2d 1176

Philip M. Suarez, Assistant Public Defender, Roseburg, argued the cause and filed the brief for appellant.

Kay Kiner James, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Acting Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

Warden, J., dissenting.

## GILLETTE, P. J.

Defendant appeals his conviction for possession of marijuana. The marijuana was discovered during a police inventory of defendant's luggage while he was on a "detox hold." The issue is whether and to what extent the police may search luggage belonging to a person temporarily detained for detoxification under ORS 426.460 in the process of making an inventory of it. Under the facts of this case, we hold that the inventory was not impermissibly intrusive and therefore affirm defendant's conviction.

When a Roseburg police officer found him in an obviously intoxicated condition on the evening in question, defendant was carrying two unlocked, closed suitcases.[1] The officer transported defendant and the suitcases to the police station and placed him in the "detox tank." He then put the suitcases in a locked room in the station, opened them to inventory the contents and discovered marijuana. Defendant insists that there was no justification for opening the suitcases, rather than simply listing them in an inventory as "suitcases."

The Roseburg Police Department has a small safe in which it keeps prisoners' valuables; the suitcases were too large to fit in it. The police practice is to keep such large items in a small booking room in the jail area of the station. There is no suggestion in this case that the practice is a subterfuge.

The room in which the suitcases were placed is accessible only through one of two locked doors; only the police have keys to the doors. However, officers at times bring prisoners being booked into the room and may occasionally leave a prisoner alone there. The record does not show what facilities there are in the room for securing a prisoner left in it or how long the prisoner might be by himself. The state asserts that concerns that the suitcases might contain valuables, contraband or weapons which another prisoner could take while left alone made the search reasonable.[2]

---

[1] At times the officer refers to one of the suitcases as a "steamer trunk." However, because defendant was carrying it, we doubt that it was large enough to hold Harpo Marx. *See* "A Night at the Opera" (MGM, 1935).

[2] The only specific reason the officer gave for the search was his desire to prevent defendant from later claiming that the police had taken money from him. However, the other concerns are self-evident.

Oregon courts have had two occasions to address the question of what kind of and how extensive a search may be made of the person and effects of a person taken into protective custody for detoxification. In *State v. Newman,* 292 Or 216, 637 P2d 143 (1981), *cert den* 457 US 1111 (1982), defendant, a 19-year-old woman, was taken into protective custody while in an obviously intoxicated condition in a car improperly parked on a city street. One of the officers, in an attempt to determine who she was, searched her purse at the scene for identification. During that search, he found and seized the drugs which later led to the criminal charges against her. There was no suggestion that the search of the purse was necessary to protect the officers or to assist in treating defendant's condition. *See State v. March,* 1 Or App 351, 462 P2d 459 (1969). Thus, the issue presented was a narrow one. The Supreme Court described it this way:

> "* * * Can the police without a warrant in a noncriminal and nonemergency situation search the property of an intoxicated person for identification at the time the person is taken into custody *for transportation to a treatment or holding facility?"* 292 Or at 221. (Emphasis in original.)

The answer, the court decided, turned on whether the search was "reasonable." 292 Or at 221. The court held that it was not. It explained its reason simply: "We do not think it was necessary for the police officer to know the name of the person that he was going to transport to the treatment holding facility." 292 Or at 222.

The court's holding in *Newman* was carefully limited to the facts of the particular case before it, but certain guidelines nonetheless emerged: (1) because the detoxification "hold" was a civil rather than a criminal process, criminal law concepts such as a search incident to an arrest are inapplicable; (2) *any* search of the person or effects of a person being held must relate to a legitimate, non-criminal investigative purpose and can only be as intrusive as is necessary to effectuate that purpose.

The foregoing principles were applied in this court's opinion in *State v. Lawrence,* 58 Or App 423, 648 P2d 1332, *rev den* 293 Or 801 (1982), where the defendant was also a person taken into custody for detoxification. At the jail, as a part of the booking process, he was searched and his property

inventoried. Found on his person was a closed clear plastic box containing a piece of white plastic drinking straw, closed at both ends; the straw was apparently opague. Officers opened the box, took out the straw, looked inside it and found the drug which led to criminal charges against the defendant.

This court found the search of the straw to be too intrusive. We said:

> "Given the fact that the purpose of ORS 426.460 is to protect intoxicated persons by keeping them in custody for a limited period (48 hours), rather than treating them as criminals, it would be anomalous to treat them the same as one in full custody arrest for a criminal offense. What is reasonable in the latter case may not be in the former. Although the issue is not presented here, it would seem reasonable for an officer taking an intoxicated person into custody to conduct a limited 'pat-down' search for weapons to ensure the safety of the officer, if the officer has a legitimate concern. * * * It is also reasonable for the booking officer to inventory (*see* ORS 133.455) the property of the intoxicated person when he will be held in jail, even though not booked for a crime, in order to protect his property and to maintain the security of the detention facility.

> "However, the inventory process in noncriminal, non-emergency cases should be less intrusive than that considered reasonable in criminal cases. Once a closed container is taken from the person during inventory of his property and is in the exclusive control of the police, it is unreasonable to open the container and seize its contents without a warrant unless the contents are in plain view and are identified as contraband without the necessity of laboratory analysis." 58 Or App at 430. (Footnote omitted.)

In *Lawrence,* and in *Newman,* the key inquiry was: Is this particular search reasonable, both in terms of scope and intensity, by virtue of the circumstances of the detoxification hold? Under the facts of each of those cases, the answer was "No." We turn now to the present case. The issue in the present case, in *Newman* and *Lawrence* terms, is: Was it reasonable for the police in this case to search the two unlocked pieces of luggage taken from defendant and stored in a room where criminal arrestees would be alone from time to time?

■ The answer is "Yes." As was true in *Newman* and *Lawrence,* no circumstance of defendant's own condition

required this search. All that was reasonable was bringing the luggage with defendant to the jail and then entering an inventory of "two pieces of luggage, unlocked." But the place where the trial judge was entitled to find, from the testimony,[3] that circumstances then required storage of the luggage, made its search reasonable.

█ Unlocked luggage in a room where arrestees might be left alone presents an obvious danger; if the luggage contains any weapon or device an arrestee might use to attack an officer or effect an escape, the police need to remove it. There is a legitimate concern that the luggage might contain such items; a search is the only way to determine the answer. We therefore hold that—under the circumstances presented here—a search at least sufficiently intrusive to uncover weapons was permissible.

Affirmed.[4]

**WARDEN, J.,** dissenting.

Because I would find the search of defendant's luggage to be more intrusive than is reasonable, I dissent.

The majority correctly quotes from *State v. Lawrence,* 58 Or App 423, 648 P2d 1332 (1982), *rev den* 293 Or 801, but then disregards the very language it quotes:

"[T]he inventory process in noncriminal, nonemergency cases should be less intrusive than that considered reasonable in criminal cases. Once a closed container is taken from the person during inventory of his property and is in the exclusive control of the police, it is unreasonable to open the container and seize its contents without a warrant unless the contents

---

[3] The dissent's construction of the facts is gleaned from various isolated comments in the transcript. Nothing in this record *required* the trial judge to find the facts on which the dissent relies. More importantly, however, the defendant did not, at trial, *argue* the alternative-place-to-store-the-trunk theory. In view of that, it would be singularly inappropriate to reverse the trial court for not adopting it.

[4] We note that, as in *Newman* and *Lawrence,* our holding in this case is a narrow one, necessarily so because "reasonableness" is the touchstone of these cases; and that standard is very closely related to specific factual settings. The general rule is and remains, however, that those taken into protective custody because of intoxication are to be interfered with—including searched—only to the extent reasonably necessary to protect them, those who have taken them into custody and the integrity of the facility in which they are lodged.

are in plain view and are identified as contraband without the necessity of laboratory analysis." 58 Or App at 431.

Here, we have two closed containers taken from defendant in an inventory of his property; the containers are in the exclusive control of the police; the police do not have a warrant; and the contents are not in plain view. Therefore, it is unreasonable to open the containers and seize their contents.

The majority makes an exception to the *Lawrence* rule out of the fact that the luggage was "stored in a room where criminal arrestees would be alone from time to time." From that fact alone, it finds the search in this case to have been reasonable. The place of storage was chosen by the police, but the majority concludes that it was "the place where the trial judge was entitled to find, from the testimony, that circumstances then *required* storage of the luggage." 66 Or App 318. (Emphasis supplied.)

The trial judge, however, did not so find and, I submit, could not so find on this record. Even assuming the unlikely fact that the Roseburg Police Department lacks any place whatsoever in which to store items of evidence too large to be placed in envelopes and kept in the police safe, the record suggests that circumstances did not *require* storage of defendant's luggage in the booking room area and that there are alternative places of storage where criminal arrestees would not have been left alone with the luggage. The testimony of Officer Beach, the only witness in this case, suggests that defendant's shoes and belt were stored in a place other than the safe. They were taken from defendant, and the evidence is that only "valuable property, money, rings, are all placed in a large envelope and then taken up front to the watch commander's desk where they are locked in a safe." There is nothing in this record to suggest that the luggage could not have been kept with the shoes and belt.

The evidence is that defendant's luggage was brought to the Roseburg police station in the trunk of a police car, seemingly a place in which they were safe and unavailable to arrestees. Nowhere does this record disclose a reason that the luggage could not have been left in the trunk of the auto.

Beach's testimony and a sketch made by him indicate that there were other areas in the holding facility, besides the

booking room area, where defendant's luggage might have been kept. His testimony was that there was a locker room "which is locked all the time" adjacent to the booking area. From his sketch and his testimony it is clear that there was an "area for washing clothes, and the washer storage for clothing." Because arrestees were locked in the booking area when left alone, property stored in the locker room or washing area would not be available to them. In his testimony, Beach also mentions a "hall that goes out into our other part of the police station." It does not strain credulity to infer that the "other part of the police station" included areas large enough to store two items of hand-carried luggage.

To hold as the majority does makes the whole question of whether police may open closed containers and seize their contents in a noncriminal, nonemergency case, depend on where the police store those containers. If they store them in a place where arrestees may be left alone with them, the police may open and search the containers and seize their contents without a warrant and without either probable cause or exigent circumstances to justify the search. If they choose to store them in a place where arrestees will not be left alone with them, the police cannot open them without a search warrant issued upon probable cause to believe that they contain contraband or other evidence of crime. *See State v. Lowry,* 295 Or 337, 348, 667 P2d 996 (1983).[1] Whether a search is reasonable under the Oregon Constitution, Article I, section 9, should not be made to depend on such a contingency. I would hold a search of closed containers under these circumstances to be more intrusive than is reasonable. Therefore, I respectfully dissent.

---

[1] At the trial there was testimony from Beach that, after removing "the plastic bag containing the material that I believed was marihuana," he "had it analyzed by Charlie Orr from the Douglas County Sheriff's Department." There is no evidence that the analysis was done pursuant to a search warrant. *State v. Lowry, supra,* 295 Or at 347, suggests that the fact that the substance was marijuana might be indisputably evident once it was in plain view.