Argued and submitted February 29, resubmitted In Banc June 5, affirmed July 18,
reconsideration denied September 7, petition for review allowed; remanded for further
consideration October 2, 1984
See 298 Or 36, 688 P2d 843 (1984)

## STATE OF OREGON,
*Respondent,*

*v.*

## DYLAN E. ROUNDS,
*Appellant.*

## (22-253; CA A28504)

685 P2d 463

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

David L. Runner, Certified Law Student, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Michael D. Reynolds, Assistant Attorney General, Salem.

ROSSMAN, J.

Warren, J., dissenting.

ROSSMAN, J.

Defendant appeals his conviction for possession of a controlled substance, ORS 475.992, assigning error to the trial court's denial of his pretrial motion to suppress LSD seized from his backpack in his grandparents' carport. We affirm.

On July 30, 1982, during the "Garibaldi Days" festival, a city police officer was dispatched to an unoccupied house to investigate a report of a suspicious person. A neighbor had phoned the police stating that he had seen a "suspicious" man walk around the house and try the doors, set a backpack in the adjacent open carport and leave. The man returned to the backpack a short time later, retrieved a container from the pack and left on foot with the container about 15 minutes before the officer arrived. The neighbor told the officer that the owner of the house had asked him in the past to call the police if he saw anyone at the house.

The officer testified that he initially believed that there might have been a burglary in progress or that someone expected to spend the night in the house; during "Garibaldi Days" the trespass problem is worse than at any other time of year, he said. After checking all doors and windows of the house, he found no evidence of burglar's tools or attempted entry. He testified that he saw a backpack leaning against a woodpile in the covered carport. The backpack was closed by a flap at the top but was not tied shut. He opened the pack to look for identification, removed a sleeping bag and found a red and white cigarette box on top of other items in the pack. While acknowledging that he "very seldom" found identification in a cigarette box, he testified that he had opened the cigarette box for the sole purpose of looking for identification. He found some white stickers, which he suspected to be LSD. Continuing his examination, he found a bank book with defendant's name on it. The officer then took the pack and the contents to the police department. A warrant was obtained, and a search revealed no further evidence of criminal activity.

The police subsequently located defendant, who identified the pack. It was discovered that defendant was the homeowner's grandson. Defendant was charged with two counts of possession of a controlled substance. He pleaded not guilty and filed a motion to suppress evidence found during the warrantless search of his backpack. The trial court denied

the motion. Defendant stipulated to the facts of this case and was found guilty of one count of possession of LSD after a trial to the court. The court made no findings relating to any "search" of the closed cigarette box, nor is any challenge made on this appeal regarding the propriety of opening that container to examine its contents. Thus, this case does not present a "closed container" issue. Accordingly, our review is focused only on the entry into defendant's backpack. With regard to that issue, the trial court found that defendant did not have an objective expectation of privacy in the backpack which society was prepared to recognize. The court found that it was reasonable under the "suspicious" circumstances for the officer to find out who had left the pack and that the officer was justified in searching the pack for identification.

■ Defendant argues on appeal that the warrantless search of his backpack violated his rights under both Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. Defendant's argument is misplaced. Because the officer was looking for identification and not evidence of a crime, this case involves a noncriminal, non-emergency situation. Accordingly, a very basic problem arises in attempting to apply the warrant requirements to the present search. In both Article I, section 9, and the Fourth Amendment, the warrant requirement is textually linked to the requirement that probable cause exists to search for evidence of a crime. In *State v. Newman,* 49 Or App 313, 316, 619 P2d 930, *reversed on other grounds* 292 Or 216, 222, 637 P2d 143 (1980), *cert den* 457 US 1111 (1982), we relied on *South Dakota v. Opperman,* 428 US 364, 96 S Ct 3092, 49 L Ed 2d 1000, 1006 n 5 (1976), in holding that, when a search is not for evidence of a crime, no probable cause is necessary, and hence the warrant requirement is inapplicable.[1] We held instead that our analysis must center on the *reasonableness* of the search under the circumstances. 49 Or App at 317; *State v. Perry,* 66 Or App 318, 674 P2d 1176, *rev den* 296 Or 536 (1984).

*Newman* involved the search of an intoxicated, uncooperative defendant's purse for identification at the scene of a noncriminal, nonemergency stop. We held that the

---

[1] The Supreme Court expressly declined to reach this issue. *State v. Newman,* 292 Or 216, 220 n 5, 637 P2d 143 (1980), *cert den* 457 US 1111 (1982).

officers' actions were reasonable and that the controlled substance he found immediately on opening the purse was lawfully seized. 49 Or App at 321. On review, the Supreme Court held that it was not necessary to know the defendant's name to transport her to a detoxification facility. It applied a standard of reasonableness to reverse our holding and suppress the contraband evidence found in her purse.[2] 292 Or at 222.

■ Under the circumstances of this case, the search of defendant's backpack for identification was reasonable. The officer was summoned to a scene where an apparent stranger had left a backpack unattended in an open carport. To the best of his knowledge, neither the stranger nor the backpack had any right to be on the premises. Given that situation, it became his responsibility to determine the identity of the owner of the pack. He had no idea as to the owner's whereabouts or when he might return. It was reasonable for the officer to open the pack and examine its contents in a legitimate, good faith effort to identify its owner.

As the trial judge said, when denying the motion to suppress:

"* * * There is no question, in my mind, that it was reasonable for the officer, under those circumstances, to find out who the person was that left the back pack. I don't believe that it is necessary for the police — in a situation like Garibaldi Days, where a little one horse town has a couple thousand people in it, there is no reason to tie up a couple of officers staking out a back pack or maybe have the neighbors sit there and keep an eagle eye on it until somebody, who left his pack, decides to come back. * * *"

Because of the reasonableness of such an inspection, the officer's inadvertent discovery and subsequent seizure of the contraband clearly was lawful. *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971); *State v. Bright,* 8 Or App 202, 493 P2d 757 (1972).

■ Moreover, we believe that the actions of the police were justified, even if we were to assume that the standard

---

[2] This case is different than *Newman,* in that the officer here had the backpack, but not the owner. Thus, it was necessary to search the pack in order to determine who it belonged to, so that it could be returned.

criminal search analysis was applicable to this case. Traditionally, a two-part "expectation of privacy" test has been applied to determine whether a search violates the protections of the Fourth Amendment: (1) whether defendant had a subjective expectation of privacy in his backpack; and (2) whether that expectation is one which society is prepared to recognize as reasonable. *See Katz v. United States,* 389 US 347, 361, 88 S Ct 507, 19 L Ed 2d 576 (1967) (Harlan, J., concurring). This test has been applied to analyze the constitutionality of searches under Article I, section 9, as well. *See State v. Holt,* 291 Or 343, 630 P2d 854 (1981).[3]

■ Undoubtedly, defendant had some expectation of privacy in his backpack, but that expectation is not one which society would recognize as reasonable. Defendant was one of the many strangers to swell the population of a small town during a local festival. After unsuccessfully trying to enter an unoccupied house, he placed the backpack against a woodpile in the adjacent *open* carport. Soon thereafter, he departed from the area on foot, making no effort whatsoever to conceal the backpack or bothering to tie the flap. He left no note explaining his presence on the premises. None of that is evidence of a reasonable expectation of privacy, subjectively or objectively. In fact, it is evidence of the exact opposite. By leaving his backpack unattended, unsecured and in plain view in an open carport, it must be said that defendant assumed the risk that anyone entering the premises would discover the strange pack, open it and examine its contents.

*Reasonableness* is the key to this case. The officer's conduct in inspecting the backpack was reasonable under the circumstances, but defendant's expectation of privacy was not. We therefore hold that defendant's backpack was properly searched for identification and that the LSD discovered during that search was legally seized.

---

[3] Although the Supreme Court has held that the protections accorded by the Fourth Amendment and Article I, section 9, are coextensive, *see State v. Florance,* 270 Or 169, 527 P2d 1202 (1974), some doubt has been cast on the continuing validity of those cases by *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982). Moreover, although in *State v. Holt,* 291 Or 43, 630 P2d 854 (1981), a search challenged under both the U.S. and Oregon Constitutions was analyzed in terms of the *Katz* expectation of privacy test, our Supreme Court has apparently never expressly adopted that federal rule as the Oregon constitutional rule. *See State v. Flores,* 68 Or App 617, 625, 685 P2d 999 (1984).

Affirmed.

**WARREN, J.,** dissenting.

Defendant was charged with two counts of possession of a controlled substance. He pleaded not guilty and filed a motion to suppress evidence found during the warrantless search of his backpack. The trial court denied the motion, and defendant was found guilty of one count of possession of LSD after a trial to the court on stipulated facts. The trial court found that defendant did not have an objective expectation of privacy in the backpack which society was prepared to recognize and that it was reasonable, under the "suspicious" circumstances, for the officer to find out who had left the backpack. The court made no findings relating to the search of the closed cigarette container and found only that the officer could search the backpack for identification.

If there is an actual, *i.e.,* subjective, expectation of privacy which society is prepared to recognize as "reasonable," the search of defendant's backpack and its contents stored in his grandparents' carport falls under the protection of Article I, section 9, of the Oregon Constitution. *See State v. Holt,* 291 Or 343, 630 P2d 854 (1981).

A backpack is used to carry personal effects. The expectation of privacy for its contents is at least as great as that recognized in a purse, *State v. Newman,* 292 Or 216, 222, 637 P2d 143 (1980), *cert den* 457 US 1111 (1982); a cosmetic kit, *State v. Downes,* 285 Or 369, 591 P2d 1352 (1979); a briefcase, *State v. Groda,* 285 Or 321, 327, 591 P2d 1354 (1979); a closed fishing tackle box, *State v. Keller,* 265 Or 622, 510 P2d 568 (1973); a closed shoe box, *State v. Turchik,* 53 Or App 499, 504, 632 P2d 497 (1981); a cassette tape case, *State v. Williams,* 48 Or App 293, 616 P2d 1178 (1980); or a camera case, *State v. DeLong,* 43 Or App 183, 602 P2d 665 (1979), *rev den* 288 Or 571 (1980). I would conclude that defendant had a subjective expectation of privacy in his closed backpack and its contents.

The next inquiry is whether defendant's subjective expectation of privacy is one which society is prepared to recognize as reasonable. *See Katz v. United States,* 389 US 347, 361, 88 S Ct 507, 19 L Ed 2d 576 (1967) (Harlan, J., concurring). The officer testified that the neighbor had said

that the "owner of the house had instructed him, in the past, that there was to be nobody around the house when he was gone." Although the majority makes much of the fact that the house was "unoccupied," the record does not show whether the owner had been gone for an hour or several months. Neither does the record suggest that defendant's grandparents either did not or would not consent to this minimal intrusion, even though they had failed to inform the neighbor. Defendant made no forcible attempt to enter the house. He did no damage to the house. He engaged in no conduct which would cause a reasonable observer to conclude that he intended to engage in criminal activity.[1] He simply left his backpack on

---

[1]The investigating officer testified:

"A [Officer]: I first checked all the doors and windows and, at that time, Trooper Stevenson, from the Oregon State Police, and Deputy District Attorney, David Paul, arrived. I explained the situation to them. We then checked the residence again, and Chief Buckmaster arrived.

"We observed a back pack in the carport, which was opened on the east and west side. We attempted to secure some identification from the back pack and who it belonged to.

"* * * * *

"Q [State's Attorney]: What were you looking for when you went into the back pack?

"A [Officer]: Identification.

"Q What was your concern when you went there and took the report from Halverson and saw the back pack?

"A Well, I first thought that there could be a burglary in progress, or the subject might have expected to spend the night there due to Garibaldi Days there at that time.

"* * * * *

"Q [Defendant's Attorney]: You stated what led you to search the back pack was: seeking identification?

"A [Officer]: True.

"Q Not burglar tools?

"A No, sir.

"* * * * *

"Q [Defendant's Attorney]: In looking around the house — Did you look around the house first before looking in the pack?

"A [Officer]: Yes.

"Q Did you find any evidence of attempted forced entry —

"A No, sir.

private property owned by his grandparents, showing, if anything, a confidence that his possessions would be safe where he left them.

The state makes no claim of probable cause, exigent circumstances, danger to a police officer, plain view or hot pursuit, or that the grandparents' carport was a known crime scene. The officer testified that his sole reason for opening the pack and searching through its contents was to look for identification. The narrow issue presented is whether it is reasonable for a police officer, without a warrant in a noncriminal, nonemergency situation, to search a backpack and its contents found on private property for identification without the consent of the owner of the backpack or the owner of the property. The majority contends, and I agree, that such a search for purposes other than to obtain evidence of a crime must be gauged by a standard of reasonableness as in *State v. Newman, supra,* 292 Or at 221.

In *Newman,* the Supreme Court squarely reversed our holding that a search of an intoxicated, uncooperative defendant's purse for identification at the scene of a noncriminal, nonemergency stop was not unreasonable. *State v. Newman,* 49 Or App 313, 619 P2d 930 (1982). Because it was not necessary to know her identity for the purpose of transporting her to a holding facility, the Supreme Court held that the search was *not* reasonable. The court reasoned that taking the defendant into custody did not deprive her of her privacy interest in her purse or allow a search of her purse or wallet without her consent, even though she had repeatedly refused to cooperate with the officers. The Supreme Court stressed in *Newman* that the case involved a nonemergency as well as a noncriminal situation. 292 Or at 222.

I see no way to make a meaningful distinction between this case and *Newman.* In *Newman,* the defendant was in custody, was handcuffed and had been placed in the back of a police car. Her purse lay some distance away outside her own vehicle. The Supreme Court characterized the search as one of property, not of the person, and concluded that it was

"Q — or any other type of burglary-type tools on the grounds or anything?
"A No."

unreasonable, as a matter of law, to open her purse to find out who she was before taking her to a treatment or holding place.

In this case, there is more reason than there was in *Newman* to suppress the evidence. It was totally unnecessary to ascertain the identity of the owner of the backpack before taking it to the police station. Whether the backpack could have been searched for identification at the time defendant sought to claim it is a question with which we need not be concerned. The only issue here is whether it could reasonably be searched for identification before removing it from the carport of defendant's grandparents. *See State v. Newman, supra,* 292 Or at 222. Although I believe that the dissent in *Newman* has the better of the case, we are bound by the majority opinion. If the result in *Newman* is correct, then the search of the backpack was unreasonable as a matter of law.

The majority holds that the officer being summoned to the scene had a responsibility to determine the identity of the owner of the pack and claims that our decision in *State v. Bright,* 8 Or App 202, 493 P2d 757 (1972), somehow supports this position. In *Bright,* an officer came upon an unattended out-of-state vehicle with a flat tire parked alongside the road in an unpopulated area. There were two gas cans, two fire extinguishers and some tires visible in the back part of the vehicle. One of the rear windows was open. The officer saw tracks where the vehicle had come down a steep, muddy Forest Service road that joined the highway at that point. About two months before, the officer had recovered a stolen vehicle alongside the same highway in the same general area. We held that the officer was justified in thinking his services might be needed and in looking for further identification. Our decision relied on *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971), and *Chambers v. Maroney,* 399 US 42, 90 S Ct 1975, 26 L Ed 2d 419 (1970), where mobility of an automobile created exigent circumstances that justified the warrantless search of an automobile stopped on the highway when there was probable cause to believe a crime had been committed. *Bright* is not relevant to the present case. A backpack left on the private property of a relative is hardly like an automobile abandoned on a remote stretch of public highway. There was no previous criminal activity known in the area.

I do not accept the proposition that, by responding to the neighbor's query, in a situation that the officer knew to be noncriminal and nonemergency, he was under a duty to discover the ownership of this backpack. The officer testified that the backpack and its contents presented no danger or hazard. He testified that he only was looking for identification and was not investigating for evidence of criminal activity. The record shows no attempt made by the officer to contact an owner of the house. Even assuming that the officer reasonably believed that the pack was abandoned, it was not necessary for him to know the name of the person it belonged to in order to transport it to the station. *Compare State v. Newman, supra,* 292 Or at 222.

Even if the majority is correct and it was reasonable for the officer to search the backpack for identification, as pointed out earlier, I believe we must address the question of whether it was reasonable to search the cigarette box for identification.[2] The officer testified that he searched it only for identification and that he "seldom" found identification in a cigarette box. Accepting the officer's testimony as true, the question of law that remains is whether a search in that place was reasonable. By the officer's own testimony, he did not believe that he would find identification in that place. If the search of the backpack was reasonable at the time and place where it was conducted, I would conclude as a matter of law

---

[2]Defendant moved to suppress the "blue backpack and all attachments and contents * * *." The affidavit in support of the motion related that:

"* * * While searching the backpack, Officer Hill found a Cigaretellos box. This was a closed container, not transparent, and was itself located inside another closed, smaller pack within the closed overall backpack. Inside this closed Cigaretellos box Officer Hill found what he believed to be controlled substances. Officer Hill seized those items and continued to search in the backpack, eventually finding some identification bearing the name of Dylan Rounds. At that point Officer Hill seized the entire backpack and transported it to the local police station. Mr. Rounds later identified the pack as his in response to a question from Officer Hill.

"The items seized were all on private property, had not been abandoned by Mr. Rounds, and were not at the time of search apparently related to any particular criminal activity articulated by the officer. Although the overall backpack may have been in plain view from streetside, anything within the closed backpack was not. * * *"

Although the focus of defendant's brief to this court was on the backpack, and there is only scant reference to the red and white cigarette box, I conclude that an issue as to the reasonableness of the officer's search of the box itself is properly before us.

that the search actually made was unreasonable in its scope. Under these circumstances, the search of defendant's pack was not reasonable and the evidence found there should have been suppressed.

Buttler, Warden and Newman, J.J. join in this dissent.