Argued and submitted March 18, affirmed July 17, 1985

# STATE OF OREGON,
*Appellant,*

*v.*

# TERRY DUMAS DeKUYPER,
*Respondent.*

## (84040768f; CA A33342)

703 P2d 261

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, Salem, and James E. Mountain, Jr., Solicitor General, Salem.

Thomas A. McHill, Lebanon, argued the cause for respondent. With him on the brief was Morley, Thomas, Kingsley & Reuter, Lebanon.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Rossman, J., dissenting.

## WARREN, J.

Defendant was charged with manufacture of a controlled substance, ORS 475.992, furnishing alcohol to a person under 21, ORS 471.410, and harassment. ORS 166.065. He moved to suppress evidence seized during a warrantless search of his residence. The trial court granted defendant's motion in its entirety, and the state appeals.

On the evening of April 13, 1984, the Lebanon police were summoned to an apartment complex to check on a "wild party" which had spilled over from an apartment into the parking lot. When Sergeant Chilson, the first officer to respond, arrived on the scene, he parked his car in front of defendant's apartment and observed a number of young people outside the apartment holding bottles or cans of beer. The door to defendant's apartment was open, and Chilson observed other young people walking around in the apartment and one youth lying on a couch. People began to enter the apartment when Chilson arrived.

As Chilson left his car and approached the apartment, the door shut. Defendant and one or two others walked toward the door and entered the apartment, shutting the door behind them. Chilson went up to the door and defendant opened it, emerged, took hold of the officer's uniform and shoved him back, saying, "Do you have a search warrant? You can't come in." When defendant opened the door, Chilson observed a number of young people leaving the apartment through a sliding glass door and running down the street to his right. Chilson arrested defendant for harassment and placed him in the patrol car.

The officer then accosted a young man who indicated that he was born in 1965 and had been at the party; Chilson arrested him as a minor in possession of alcohol.[1] Chilson returned to the door, and a man over 21 years of age emerged. When the door opened, Chilson observed that a youth was still lying on the couch. The emerging man told Chilson that no one else was in the apartment. Chilson let the man go, because he was of drinking age.

---

[1] As discussed *infra,* police officers are not authorized to arrest persons who commit violations, such as being a minor in possession of alcohol. *See* n 4 and 5, *infra,* and accompanying text. The validity of this arrest is not an issue in this case.

Chilson then returned to the patrol car and attempted to obtain defendant's consent to search the apartment. He testified, "I told him we were specifically looking for minors that might be in the party." At no time did Chilson inform defendant of his *Miranda* rights or that he had the right to refuse to consent to the search. Chilson said that he told defendant that, if he did not grant permission, the officer would secure the premises and attempt to get a search warrant. Defendant testified that he understood Chilson to have said that he could search the apartment even without defendant's consent. Defendant told Chilson to go ahead and search the apartment.

Chilson and Officer Somers entered the apartment and found three people on the main floor. Two were under 21, and one, defendant's brother, was over 21. The two youths were taken into custody, and defendant's brother was allowed to leave. Somers immediately went upstairs to see if there were any other youths in the apartment and "looked in the closets and stuff in the two bedrooms." He slid open the door to a large wardrobe closet "looking for people." Inside the closet Somers observed a grow light and some seedlings in two containers, which he recognized as marijuana.

Somers informed Chilson of what he had found, and Chilson told him to stop the search. They secured the residence and removed the people, and Chilson returned to the police station while Somers remained in the residence. At the station, Chilson told defendant what Somers had found in the closet, and defendant purportedly consented to the officers' further search and seizure of incriminating evidence. Chilson testified that another officer obtained defendant's signature on a consent form, but the form was not received in evidence, because the state could not authenticate defendant's signature. The officers did not attempt to get a search warrant.

Chilson returned to the apartment, and the officers seized the containers with the plants, a grow light, some marijuana pipes, a bottle with water and marijuana seeds in it and some other drug paraphernalia from the upstairs bedroom and closet. On the main floor they seized some alcohol bottles and other paraphernalia. They also photographed the upstairs closet and portions of the main floor where alcohol containers were visible.

Defendant moved to suppress the items found in his apartment as the fruits of an illegal warrantless search. The state argued that defendant had consented to the search and, in the alternative, that the warrantless search was based on probable cause to believe that there were minors in possession of alcohol in the residence and was justified by exigent circumstances, the youths' escaping through the glass door. *See State v. Girard,* 276 Or 511, 555 P2d 445 (1976). The trial court ruled that defendant's consent was invalid and that the search was made without probable cause. On appeal, the state does not contend that the trial court erred in ruling that the consent was invalid but argues only that the warrantless search was valid as based upon probable cause and exigent circumstances.

■  The state contends in its brief that the officers "were confronted with probable cause and exigent circumstances justifying their immediate entry into the apartment, at least for the purpose of apprehending minors in possession of liquor and those guilty of furnishing it." The state does not argue that the officers had probable cause to search for evidence of any offense, nor does the officers' testimony indicate that their purpose in entering was to search for and to seize evidence. It appears from the officers' testimony that their sole purpose in entering the apartment was to search for and to arrest minors in possession of alcohol. The evidence supports no other justification.[2]

---

[2] The dissent attempts to justify the legality of the search by "inferring" that the officers entered the apartment to look for evidence concerning the commission of a criminal offense. In so doing, the dissent makes an argument which the state never presented. It is improper for us to supply a rationale *"ad hoc "* in order to reverse a trial court's ruling. If the state had raised this argument below and preserved the claimed error, we might agree with the dissent; however, it did not do so.

The state simply did not argue at trial that the officers entered the apartment to look for evidence; that was not one of the state's contentions in the quotation the dissent sets forth. It did not argue to this court that the officers entered to find evidence. On appeal, the state sought to justify the entry made "for the purpose of apprehending minors in possession of liquor * * *." Apprehend means to arrest. The conduct of the officers also indicates their true intent. After entering, they did not cite the youths for a violation or take down their names or statements to preserve evidence or their presence as witnesses. The officers arrested the youths in order to charge them with an offense. We should decide this case on the basis of arguments made here and below and not on the basis of arguments which the state might have, but failed to make. In addition, the officers' having observed one youth lying on a couch, apparently passed out, was not an "emergency" in which there was a "compelling" or an "urgent need to render aid and assistance within." *State v. Davis,* 295 Or 227, 238, 666 P2d 802 (1983); *State v. Newman,* 292 Or 216, 221, 637 P2d 143 (1981).

At the time of their entry into the apartment, the officers had defendant, the occupant of the apartment, in custody in the patrol car. It appears from the officers' actions that they were not interested in arresting anyone else for furnishing alcohol to minors. After ascertaining that two of the people present were over 21, the officers let them leave. They did not have probable cause to believe that any person present in the apartment when they entered had furnished alcohol to a minor. It was at least as likely that the alcohol had been provided by defendant or that each person had furnished his own alcohol as that persons remaining in the apartment had furnished alcohol to other minors. When the officers entered the apartment, they had probable cause to believe only that persons inside had committed the offense of being minors in possession of alcohol.

Both parties frame their arguments as if the dispositive issue is whether the officers' entry to search was justified by probable cause and exigent circumstances. In directing their arguments towards an exception to the constitutional requirement of a warrant to search, the parties have overlooked the officers' statutory authority to search. We conclude that the officers were not authorized by statute to enter the apartment to search for minors in possession of alcohol and that the lack of statutory authority requires an affirmance of the trial court's ruling.

■ ORS 133.535 sets forth the permissible objects of search and seizure:

"The following are subject to search and seizure under ORS 133.525 to 133.703:

"(1)  Evidence of or information concerning the commission of a criminal offense;

"(2)  Contraband, the fruits of crime, or things otherwise criminally possessed;

"(3)  Property that has been used, or is possessed for the purpose of being used, to commit or conceal the commission of an offense; and

"(4)  A person for whose arrest there is probable cause or who is unlawfully held in concealment."[3]

---

[3] Although ORS 133.535 technically applies only to searches made pursuant to a warrant ("under ORS 133.525 to 133.703"), the scope of a lawful warrantless search can be no broader than that of a lawful search with a warrant. Exigent circumstances only supply an exception to the warrant requirement; they do not justify a search of broader scope than that which could be authorized by a search warrant.

Because the state did not argue below and does not argue here that the search was made in pursuit of objectives permitted under subsections (1), (2) or (3), the search must be justified under subsection (4).

■■ The only offense which the officers had probable cause to believe persons in the apartment had committed was that of being minors in possession of alcohol. That offense is not a crime; it is only a violation. ORS 471.430.[4] Police officers are authorized to arrest a person without a warrant if they have probable cause to believe that the person has committed certain *crimes* or if the person has committed an offense *other than a violation* in the officer's presence.[5] They are also authorized to enter premises to make an arrest.[6] The police may not arrest a person without a warrant for having committed a violation. Neither is he authorized to enter premises to issue a citation to a person who has committed a violation.[7]

---

[4] ORS 471.430 provides, in pertinent part:

"(1) No person under the age of 21 years shall attempt to purchase, purchase or acquire alcoholic liquor. Except when such minor is in a private residence accompanied by the parent or guardian of the minor and with such parent's or guardian's consent, no person under the age of 21 years shall have personal possession of alcoholic liquor.

"* * * * *

"(4) Any person who violates subsection (1) or (3) of this section commits a violation punishable by a fine of not more than $250."

[5] ORS 133.310 provides, in pertinent part:

"(1) A peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed:

"(a) A felony, a Class A misdemeanor or an unclassified offense for which the maximum penalty allowed by law is equal to or greater than the maximum penalty allowed for a Class A misdemeanor, or a major traffic offense as defined in ORS 484.010(5); or

"(b) Any other offense in the officer's presence *except* traffic infractions as defined in ORS 153.505 and *violations* as defined in ORS 161.565." (Emphasis supplied.)

[6] ORS 133.235(5) provides:

"In order to make an arrest, a peace officer may enter premises in which the officer has probable cause to believe the person to be arrested to be present."

[7] Police have limited authority under ORS 133.072 only to stop and detain a person for a violation:

"(1) When a person has committed a violation as defined in ORS 161.565 in the presence of a peace officer, the officer may issue and serve a citation to the person as provided in ORS 133.055 and 133.065.

Because the police could not arrest the people, they were not authorized to search for them by ORS 133.535(4), which allows the search for and seizure of "[a] person for whose arrest there is probable cause * * *." Because the officers were not authorized to search for the people, or to enter to issue citations, they could not enter the apartment, even if they had probable cause to believe that an offense had been committed in their presence and exigent circumstances existed. The legislature's withholding of authority to arrest a person for a violation and to enter premises to issue a citation is rationally based on the fact that violations are less serious offenses than are crimes and that violators pose less of a risk of danger to society than do criminals. The officers' entry into the home was illegal, and any items found and seized therein were properly suppressed.[8]

Affirmed.

**ROSSMAN, J.,** dissenting.

I disagree with the majority's application of ORS 133.535(4) to this case and with its conclusion that the officers lacked statutory authority to search defendant's apartment. I believe that the officers were both statutorily authorized and properly motivated by probable cause and exigent circumstances. Accordingly, I dissent.

As the majority notes, ORS 133.535 sets forth the permissible objects of search and seizure:

"The following are subject to search and seizure under ORS 133.525 to 133.703:

"(1)   Evidence of or information concerning the commission of a criminal offense;

---

"(2)   The peace officer may stop and detain a person for a violation offense for the purposes of investigation reasonably related to the violation offense, identification of the person and issuance of a citation to the person.

"(3)   A peace officer may detain a person pursuant to this section only for such time as it is reasonably necessary to investigate and verify the person's identity."

[8] The state argues that we should remand the case for a determination of whether defendant's written consent to search was valid. Because that consent was obtained *after* the police confronted defendant with their knowledge of the presence of contraband, which we determine to have been the product of an illegal search, the written consent is tainted and invalid.

"(2)   Contraband, the fruits of crime, or things otherwise criminally possessed;

"(3)   Property that has been used, or is possessed for the purpose of being used, to commit or conceal the commission of an offense; and

"(4)   A person for whose arrest there is probable cause or who is unlawfully held in concealment."

The majority focuses on subsection (4), dealing with warrantless arrests, because it concludes that the only argument made by the state in support of the search is that the officers were looking for minors to *arrest* for possession of alcohol. ORS 471.430. Because that offense is a mere violation and because peace officers are not authorized to make warrantless arrests for violations, the majority holds that the search in this case was impermissible.

Although I do not take issue with the majority's statutory interpretation, I believe it construes the state's arguments much too narrowly and thereby dictates the result it ultimately reaches. The state does not argue, as the majority contends, that its only reason for entering defendant's apartment was to arrest minors. The state has consistently argued that the officers' justification for entering the apartment was to look for minors who had been furnished and were consuming alcohol. At trial, the state contended that the officers were confronted with

"* * * probable cause to believe that there are [sic] juveniles who were consuming intoxicants in that residence [and] exigent circumstances to enter that apartment because of the facts of the safety for the individuals and probable cause to believe a crime was being committed * * *."

That contention was consistent with Officer Chilson's statement when he informed defendant that they were "specifically looking for minors that might be at the party." On appeal, the state first argues that the officers entered the apartment to "search for minors who had been furnished liquor or persons involved in the furnishing of liquor to minors." Later, the state contends:

"The police were confronted with probable cause and exigent circumstances justifying their immediate entry into the apartment, *at least* for the purpose of apprehending

minors in possession of liquor and those guilty of furnishing it." (Emphasis supplied.)

If one were to take portions of the above statements and read them out of context, it might appear that the only justification for the search that has been advanced by the state is that the officers planned to arrest minors. However, when the state's arguments are considered in total, they are easily broad enough to encompass the argument that the officers were looking for "evidence of or information concerning the commission of a criminal offense." ORS 133.535(1).

Defendant was, among other things, in custody for furnishing alcohol to minors. The best evidence of that offense would be minors to whom alcohol had been furnished. Presumably, the most likely place to obtain that evidence was inside the apartment. In addition, the officers could have been looking for evidence of minors in possession of alcohol,[1] which also would have been most readily available inside the apartment.

Thus, contrary to the majority's conclusion, the search was statutorily authorized under ORS 133.535(1). Statutory authorization is only the lesser of two obstacles the state must hurdle in order to justify the search. It must also pass constitutional muster, which requires both probable cause and exigent circumstances. The majority concedes that there was probable cause to believe that minors in the apartment were in possession of alcohol. I believe that it is equally apparent that there was probable cause to believe that the minors at the party had been furnished the alcohol which they possessed.

It is also clear that there were exigent circumstances.

---

[1] It should be noted that, under ORS 133.535(1), officers may look only for evidence of or information concerning the commission of a "criminal offense." Furnishing alcohol to minors, ORS 471.410, is a misdemeanor; being a minor in possession of alcohol, ORS 471.430, is a violation. Although "criminal offense" is not defined, I believe it encompasses both misdemeanors and violations. A misdemeanor is a crime, ORS 161.545; a violation is not. ORS 161.565. However, both misdemeanors and violations are "offenses," see ORS 161.505; compare ORS 161.515 and 161.565, and both are "criminal" to the extent that they involve the "criminal" code. Moreover, within ORS 131.535, when the legislature intended to limit a provision only to "crimes," it did so expressly. See ORS 131.535(2) (authorizing searches for "fruits of crime" (emphasis supplied)). Accordingly, I believe that the term "criminal offense" is used generically to describe any breach of the criminal code, including violations.

The party, which had started in defendant's apartment, had spilled over into the parking lot. As the police officers approached, the youthful revelers sought refuge in the apartment. Some were in the process of escaping from the scene, while others were observed attempting to conceal evidence inside the apartment. Moreover, the officer observed one minor passed out on the couch. In my opinion, the potential loss of evidence, combined with the risk of harm to minors, made the situation sufficiently exigent. The majority concedes in its footnote 2 that I am correct, but contends that we cannot reach this argument because it was not properly raised by the state. Because I believe that the issue was adequately raised, I would reverse the suppression order and remand for further proceedings.