**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Ralph Joseph WALKER,
Defendant–Appellee.**

No. 90–4067.

United States Court of Appeals,
Tenth Circuit.

Aug. 13, 1991.

Dee Benson, U.S. Atty. (Wayne Dance, Asst. U.S. Atty., with him on the brief), Salt Lake City, Utah, for plaintiff-appellant.

James Esparza, Salt Lake City, Utah, for defendant-appellee.

Before SEYMOUR and EBEL, Circuit Judges and BROWN, District Judge.*

* The Honorable Wesley E. Brown, United States District Senior Judge for the District of Kansas, sitting by designation.

## ORDER ON PETITION
## FOR REHEARING

WESLEY E. BROWN, District Judge.

█ This matter is before the panel on appellant's petition for rehearing. The relevant facts were outlined in the panel's opinion, *United States v. Walker*, 933 F.2d 812 (10th Cir.1991), and will not be repeated here. Appellant contends that in the initial opinion we erroneously applied a "bright line" rule that was contrary to established Fourth Amendment precedent. We disagree. The principle applied in this case came directly from *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny, which established that the Fourth Amendment usually requires some degree of individualized suspicion amounting to an objectively reasonable suspicion of criminal activity in order to justify even a temporary seizure for questioning. We found that the seizure in the instant case was not reasonably related in scope to the circumstances that justified the detention in the first place (a speeding violation), and we therefore concluded that it was unreasonable under *Terry* because there was no objective reasonable suspicion upon which to detain the defendant for questioning about contraband. In doing so, we reached the same conclusion reached by the court under similar circumstances in *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988). Although appellant again contends that there are "several important factual differences" between the instant case and *Guzman*, appellant does not explain how *Guzman* differs in any material respect from this case. Similarly, we find no conflict between the rule applied in the instant case and other Tenth Circuit decisions cited by appellant.

The government correctly points out, however, that the Supreme Court has recognized that in certain limited circumstances the government's interest in law enforcement may justify an intrusion on privacy without any measure of individualized suspicion. *See Treasury Employees*

*v. Von Raab*, 489 U.S. 656, 668, 109 S.Ct. 1384, 1391–92, 103 L.Ed.2d 685 (1989). Specifically, the Court has applied this principle in several cases dealing with stops of motorists on public highways. *See United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *Michigan State Police v. Sitz*, — U.S. —, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). *See also Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Upon further review of appellant's argument, it appears that the government raised an issue in this case that was not raised in *Guzman*[1]: that holding the defendant to ask him questions about contraband was reasonable—not because it was reasonably related to the initial justification for the stop—but because the special needs of the government in detecting drug traffickers outweighed the brief intrusion on the defendant's liberty caused by detaining him for a few questions. In our initial opinion, we dealt only with the question of whether the detention of the defendant extended beyond what was reasonably necessary to issue a traffic citation. In doing so, we failed to address appellant's argument that the detention was lawful even in the absence of any reasonable suspicion.

In support of its argument, appellant cites *Michigan State Police v. Sitz, supra,* and *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). In *Sitz*, the Supreme Court upheld the validity of a sobriety checkpoint operated by the Michigan State Police. In that case, a checkpoint to detect drunk drivers was established at a selected site on a state road. All motorists traveling through this checkpoint were briefly detained while officers asked the drivers a few questions and looked for signs of intoxication. The Supreme Court rejected an argument from motorists who had been stopped at the checkpoint that the detention constituted an unreasonable seizure under the Fourth Amendment. The Court found that the seizure was reasonable even though the

---

1. The Supreme Court's opinion in *Michigan State Police v. Sitz, supra,* was issued after our decision in *Guzman*.

motorists were stopped in the absence of any individualized suspicion because the state's interest in reducing drunk driving and the harms associated with it outweighed the measure of the intrusion on the motorists who were stopped briefly at the checkpoint.

The checkpoint cases cited by appellant do not lead to the conclusion that the seizure in the instant case was reasonable. In *Sitz*, the Court found that the level of intrusion on motorists stopped at a sobriety checkpoint was slight. The Court reached this conclusion by examining what it called the level of "objective" and "subjective" intrusion on the motorist. The objective intrusion was gauged by the duration of the seizure and the intensity of the investigation. It is true that the duration of the seizure in the instant case (a few minutes at most) and the intensity of the investigation (four or five questions relating to contraband) are not unlike those found in *Sitz*. The so-called subjective intrusion in this case, however, differs markedly from that found in *Sitz*. One factor in this subjective inquiry is the fear and surprise engendered in law abiding motorists by the nature of the detention. *Sitz*, —— U.S. at ——, 110 S.Ct. at 2486, 110 L.Ed.2d at 421. As noted in *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), this type of concern is appreciably less in the case of a checkpoint stop than it is when an officer makes a sporadic or random decision to detain an individual. There is nothing in the record before us to indicate that the officer's discretion in this case was constrained in any way with regard to which traffic violators would be detained for additional questioning about contraband. Although the subjective intrusion may be somewhat lessened by the fact that such questioning only occurred after a motorist had been lawfully detained in the first instance for a traffic violation, the officer was apparently free to choose which individuals would be detained for additional questioning and which individuals would not be. *Cf. Prouse*, 440 U.S. at 661, 99

S.Ct. at 1400 ("This kind of standardless and unconstrained discretion is the evil the Court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed, at least to some extent.") In terms of the subjective intrusion on a motorist stopped for a traffic infraction, the record in this case indicates that the seizure at issue more closely resembled the type of random "roving patrol" denounced in *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) than the systematic checkpoint that the Court approved of in *Sitz. Cf. Prouse*, 440 U.S. at 657, 99 S.Ct. at 1398 ("We cannot assume that the physical and psychological intrusion visited upon the occupants of a vehicle by a random stop to check documents is of any less moment than that occasioned by a stop by border agents on roving patrol. * * * For Fourth Amendment purposes, we also see insufficient resemblance between sporadic and random stops of individual vehicles making their way through city traffic and those stops occasioned by roadblocks where all vehicles are brought to a halt or to a near halt, and all are subjected to a show of the police power of the community.") Moreover, the questioning that took place here cannot be characterized as idle conversation; it clearly was directed toward the motorist's possible involvement in serious criminal activity unrelated to the speeding violation.[2] We think this type of questioning—about matters unrelated to the reason for the stop—would naturally engender fear and resentment in otherwise law-abiding citizens who expect to be detained briefly for the purpose of receiving a traffic citation. *Cf. Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (The ordinary traffic stop is "nonthreatening" because the individual will be detained briefly while the officer conducts an inquiry reasonably related in scope to the justification for the stop).

We recognize that the government has a significant interest in preventing the transportation and distribution of illegal drugs

2. The Government did not argue that the circumstances in the instant case gave rise to a suspicion that the defendant was under the influence of drugs or alcohol.

and other contraband. The question remains whether the method of furthering that interest that was used in the present case justifies the intrusion upon those Fourth Amendment interests outlined above. We find that on the record before us it does not. As previously noted, the lack of any constraint on an officer's decision to detain some individuals and to let others go creates a situation ripe for abuse. Such unfettered discretion undermines the liberty and privacy interests protected by the Fourth Amendment. *Cf. Brignoni–Ponce,* 422 U.S. at 883, 95 S.Ct. at 2581 (Even though the intrusion incident to a stop by border agents to detect illegal aliens is modest, it is unreasonable under the Fourth Amendment to make such stops on a random basis) *and Martinez–Fuerte,* 428 U.S. at 566–67, 96 S.Ct. at 3086–87 ("The principal protection of Fourth Amendment rights at checkpoints lies in appropriate limitations on the scope of the stop.") Additionally, there is no evidence in the record before us relating to the effectiveness of the method employed by the government to further its interest. The record sheds no light on whether detaining traffic violators to question them about contraband is an effective way to uncover the transportation of such substances or whether it unjustifiably burdens those using the highways for legitimate purposes. It certainly cannot be said that there is some manifest relationship between individuals who violate the traffic laws regulating vehicle speed and those involved in the transportation of illegal substances. *Cf. Prouse,* 440 U.S. at 659, 99 S.Ct. at 1399 ("Absent some empirical data to the contrary, it must be assumed that finding an unlicensed driver among those who commit traffic violations is a much more likely event than finding an unlicensed driver by choosing randomly from the entire universe of drivers.") Thus, the cases cited by appellant do not support the conclusion that the seizure in the instant case was reasonable even in the absence of an articulable suspicion of criminal activity.

■ *Pennsylvania v. Mimms* likewise does not support a finding that the detention in the instant case was reasonable. In *Mimms,* the Court found that it was reasonable for an officer making a routine traffic stop to direct a motorist to step out of the car while a citation was issued even though the officer had no suspicion that the driver was armed with a weapon. The Court found that the state's interest in furthering the safety of the officer outweighed the intrusion on the driver's liberty caused by the order to get out of the car. The Court found that the additional intrusion caused by making the driver get out of the car was "de minimis." *Mimms,* 434 U.S. at 111, 98 S.Ct. at 333. The Court noted that the driver was only being asked to expose to view a little more of his person than was already exposed and that the only effect of the order was that the driver would spend the time during the stop along side of the car instead of in the driver's seat. This was termed at most "a mere inconvenience." We do not think that the detention of the defendant in the instant case is comparable to the order to get out of the car in *Mimms.* Appellant is correct that because the initial stop of the defendant was unquestionably lawful that we should only be concerned with the incremental intrusion caused by Officer Graham detaining the defendant to ask the series of questions relating to contraband. *Cf. Mimms,* 434 U.S. at 109, 98 S.Ct. at 332. But notwithstanding the Supreme Court's recognition that an individual operating an automobile upon the highway may have a lesser expectation of privacy than does an individual in a residence, the person operating a car "does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to governmental regulation." *Prouse,* 440 U.S. at 662, 99 S.Ct. at 1400. We think that the detention of a motorist stopped for speeding to question him about what he has in his car that is not subject to public view[3]

---

**3.** The district court found that the questions asked of the defendant in this case were "intrusive" in nature. We find this characterization to be accurate. We do not address the Government's concern that the ruling in this case in effect bars an officer from engaging in ordinary

and whether he is carrying large amounts of cash clearly impacts to some extent upon legitimate Fourth Amendment interests in privacy and security. This is clearly something more than a "mere inconvenience" and cannot be justified under the rationale of *Pennsylvania v. Mimms.* We therefore reaffirm our initial conclusion that the detention of the defendant constituted an unreasonable seizure under the Fourth Amendment.

■ Appellant next contends that the panel used the wrong standard of review in examining whether there was a reasonable suspicion of criminal activity to support the detention in this case. The panel stated that an appellate court must accept the district court's determination that the circumstances did not give rise to an objective reasonable suspicion unless that determination was clearly erroneous. 933 F.2d at 817. Citing generally to *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1, appellant contends that *de novo* review is appropriate in these circumstances. Although appellant contends that the Supreme Court "made clear" that *de novo* review is appropriate, we find no mention of the appropriate standard of review in *Sokolow.*

There appears to be a split among the circuits regarding the proper standard of review on this issue. *See United States v. Peoples,* 925 F.2d 1082, 1085 (8th Cir.1991) (applying clearly erroneous standard of review); *United States v. Rose,* 889 F.2d 1490, 1496 (6th Cir.1989) (same); *United States v. Mondello,* 927 F.2d 1463, 1470 (9th Cir.1991) (whether the agent had a reasonable suspicion is a mixed question of fact and law subject to *de novo* review); *United States v. Uribe-Velasco,* 930 F.2d 1029, 1032 (2nd Cir.1991) (*de novo* review is appropriate). *See also United States v. Bell,* 892 F.2d 959, 969 (10th Cir.1989) (Ebel, J., dissenting). The question of reasonable articulable suspicion to support an investigatory detention, which this court reviews under the clearly erroneous stan-

dard, should not be confused with the ultimate determination of reasonableness under the Fourth Amendment, which we review *de novo, see, e.g., United States v. Pena,* 920 F.2d 1509, 1513–14 (10th Cir. 1990).

In the instant case, the panel found that the "clearly erroneous" standard was appropriate, relying on *United States v. Turner,* 928 F.2d 956 (10th Cir.1991). Because a three-judge panel cannot overrule circuit precedent, we must deny the petition for rehearing. *See United States v. Spedalieri,* 910 F.2d 707, 710 n. 3 (10th Cir.1990). The panel opinion was clearly consistent with prior Tenth Circuit precedent.

It is therefore ordered that the petition for rehearing is denied.

---

conversation with motorists during traffic stops. Such is not the case. As the Government persuasively points out, it is impossible to draw

"bright lines" in the area of Fourth Amendment rights. Each case must be dealt with upon the totality of the circumstances presented.