Alexander Lewis **MORRIS,**
Appellant (Defendant),

v.

The **STATE of Wyoming,**
Appellee (Plaintiff).

No. 94–187.

Supreme Court of Wyoming.

Dec. 14, 1995.

Leonard D. Munker, State Public Defender; Diane Lozano, Assistant Public Defender; Gerald M. Gallivan, Director, Defender Aid Program; and Frederick Dethlefsen, Student Intern. Argument by Mr. Dethlefsen, for Appellant.

Joseph B. Meyer, Attorney General; Sylvia Lee Hackl, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Mark T. Moran, Assistant Attorney General. Argument by Mr. Moran, for Appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

LEHMAN, Justice.

Pursuant to a plea agreement, Appellant Alexander L. Morris (Morris) pled guilty to charges of conspiracy to deliver controlled substances and possession with intent to deliver a controlled substance, while reserving the right on appeal to seek review of the district court's ruling on his motion to suppress. The issue we decide is whether the district court erred in determining that the search of Morris' wallet by a deputy sheriff (Deputy) was a reasonable search and thus the fruits derived from the search were admissible evidence.

We reverse.

## ISSUES

Morris phrases the issue as:

Whether the trial court erred by denying Appellant's motion to suppress all physical and testimonial evidence directly and indirectly derived from the illegal search of Appellant's wallet.

The State of Wyoming rephrases the issue as:

Whether the trial court properly denied Appellant's motion to suppress evidence obtained as a result of searching his wallet.

## FACTS

On August 15, 1993, a deputy sheriff responded to a report that Morris was sleeping in the backyard of a private residence in Dayton, Wyoming. The Deputy awoke Morris, asked if he was okay, and requested identification. Morris could not find his driver's license but produced a MSHA mine safety card and a social security card, neither of which bore a photograph or home address.

Morris was not arrested but, because he was unsteady and disoriented, the Deputy suggested that they return to the sheriff's office so that Morris could contact someone to come and get him. Morris agreed to this suggestion. Upon arrival at the office, Morris gave the Deputy the telephone number and name of a person to contact; however, the call was received by an answering machine. The Deputy then inquired whether Morris might have any phone numbers of friends in his wallet. It was at this time that Morris discovered he had lost his wallet. The Deputy recalled seeing Morris with his wallet in the patrol vehicle and offered to search the vehicle for it. Morris did not reply to the Deputy's offer.

After locating the wallet on the floorboard of his patrol vehicle, the Deputy proceeded to search the wallet. Found therein was a tightly folded piece of paper containing a white powdery substance. The Deputy confronted Morris with the powdery substance and inquired whether Morris had anything else on his person that he should know about. Morris produced from his pocket a bag of marijuana and a pipe. Morris was then arrested for possession of a controlled substance; and, during the booking process, 15 bindles of the white powdery substance were

found on his person. The substance was later identified as methamphetamine.

The district court denied Morris' motion to suppress all evidence derived from the Deputy's warrantless search of his wallet. Timely pursuit of this appeal followed Morris' conditional plea of guilty.

### MOTION TO SUPPRESS

#### A. Standard of Review

■ Generally, evidentiary rulings of a district court are not disturbed on appeal unless a clear abuse of discretion is demonstrated. *Wilson v. State,* 874 P.2d 215, 218 (Wyo.1994); *Armstrong v. State,* 826 P.2d 1106, 1111 (Wyo.1992); *Garcia v. State,* 777 P.2d 603, 607 (Wyo.1989). " 'An abuse of discretion has been said to mean an error of law committed by the court under the circumstances.' " *Wilson,* 874 P.2d at 218 (*quoting Martinez v. State,* 611 P.2d 831, 838 (Wyo.1980)). It is well established that when reviewing a district court's ruling on a motion to suppress,

> [f]indings on factual issues made by the district court considering a motion to suppress are not disturbed on appeal unless they are clearly erroneous. *Hyde v. State,* 769 P.2d 376, 378 (Wyo.1989); *Roose v. State,* 759 P.2d 478, 487 (Wyo.1988). * * * Since the district court conducts the hearing on the motion to suppress and has the opportunity to: assess the credibility of the witnesses; the weight given the evidence; and make the necessary inferences, deductions and conclusions, evidence is viewed in the light most favorable to the district court's determination. *United States v. Werking,* 915 F.2d 1404, 1406 (10th Cir.1990).

*Wilson,* 874 P.2d at 218. *See also Murray v. State,* 855 P.2d 350, 354 (Wyo.1993); *United States v. Soto,* 988 F.2d 1548, 1551 (10th Cir.1993) (*citing United States v. Horn,* 970 F.2d 728, 730 (10th Cir.1992) and *United States v. Evans,* 937 F.2d 1534, 1536 (10th Cir.1991)). The issue of law before us, whether an unreasonable search or seizure occurred in violation of constitutional rights, is reviewed *de novo. Guerra v. State,* 897 P.2d 447, 452 (Wyo.1995); *Wilson,* 874 P.2d at 218. *And see Lopez v. State,* 643 P.2d 682,

683–85 (Wyo.1982); *Cook v. State,* 631 P.2d 5, 7–8 (Wyo.1981); and *United States v. Walker,* 941 F.2d 1086, 1090 (10th Cir.1991).

#### B. Discussion

■ Appellant contends that his constitutional rights were violated by the Deputy's initial search of his wallet; by the seizure of a folded piece of paper contained within his wallet; by the subsequent search of that folded paper; and by the seizure of the contents contained within the folded paper. Appellant claims that this alleged illegal and unreasonable search and seizure requires the suppression of all evidence, direct and indirect, derived therefrom and requires the voiding of his initial arrest.

Article 1, § 4 of the Wyoming Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

*See Goettl v. State,* 842 P.2d 549, 558–75 (Wyo.1992), Urbigkit, J., dissenting (arguing search and seizure provisions of the state constitution provide stronger protection than the federal constitution). The Fourth Amendment to the United States Constitution grants

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The protection of the Fourth Amendment is applied to state action under the due process clause of the Fourteenth Amendment to the United States Constitution. *Wilson,* 874 P.2d at 219 (*citing Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949)).

■ The State argues that because the encounter between the Deputy and Morris was a consensual, non-coercive, non-custodial contact for the purposes of ensuring Morris' welfare, Fourth Amendment rights were not implicated. We agree that the encounter between the Deputy and Morris was a consensual encounter, and we also agree that the Deputy was performing his community caretaker function, as discussed in *Wilson*, when he offered to help Morris contact someone to come and get him and when he transported Morris to the sheriff's office. However, we disagree that Fourth Amendment rights were not implicated. Searches and seizures made without a warrant or outside the judicial process are per se unreasonable under both the Fourth Amendment to the United States Constitution and Art. 1, § 4 of the Wyoming Constitution, subject only to a few clearly articulated exceptions. *Mickelson v. State*, 906 P.2d 1020, 1022 (Wyo.1995); *Guerra*, 897 P.2d at 452; *Roose v. State*, 759 P.2d 478, 481 (Wyo.1988).

In *State v. Paasch*, 117 Or.App. 302, 843 P.2d 1011 (1992), a citizen found a wallet and delivered it to the police. A policeman searched the wallet, finding drugs. On appeal, the defendant argued that the search was illegal and the evidence should have been suppressed. The Oregon Court of Appeals agreed, stating:

> Article I, section 9, of the Oregon Constitution protects "the right of people to be secure in their persons, houses, papers and effects against unreasonable search, or seizure." A government action that invades a protected property or privacy interest is a search. *State v. Faulkner*, 102 Or.App. 417, 420, 794 P.2d 821, *rev. den.* 310 Or. 422, 799 P.2d 151 (1990). People have a privacy interest in wallets and other personal effects that *does not disappear because the personal effect has been lost or mislaid.* *See State v. Pidcock*, 306 Or. 335, 759 P.2d 1092, *cert. den.* 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1988); *State v. Morton*, 110 Or.App. 219, 822 P.2d 148 (1991). The deputy's intrusion into the compartments of the wallet was a search.

*Id.*, 843 P.2d at 1012 (emphasis added). The court went on to hold the search unreasonable and unlawful. Similarly, in *State v. Morton*, 110 Or.App. 219, 822 P.2d 148 (1991), the court held that although the police could search a lost or mislaid purse for identification purposes only, the search had to end once identification was found. The police found seven pieces of identification and still continued to search the purse, whereupon drugs were found. The court ruled that the continuation of the search after identification had been found was unreasonable and unlawful. *Id.*, 822 P.2d at 150. The court went on to hold that the police lacked probable cause to conduct an investigative search of the cigarette case for contraband, which was contained within the purse, and stated that in a non-emergency, non-investigative situation, it is unreasonable for an officer to open any closed container. *Id.* Additionally, in *State v. May*, 608 A.2d 772 (Me.1992), a defendant's wallet was found in the back of a police car and was taken into the station after the defendant had been released from custody. The wallet was searched, and cocaine was found. On appeal, the court found that the sealed wallet was a " 'repository for personal, private effects' " and thus was inevitably associated with an expectation of privacy. *Id.*, at 774 (*citing Arkansas v. Sanders*, 442 U.S. 753, 762 n. 9, 99 S.Ct. 2586, 2592 n. 9, 61 L.Ed.2d 235 (1979)). The court held that the defendant had not abandoned his wallet and, therefore, the officer's warrantless search of the wallet had to comply with or find exception to the warrant requirement of the Fourth Amendment. *Id.* The court concluded the search was unlawful. *Id.*, at 776.

Morris likewise had an expectation of privacy regarding his wallet. The record discloses that Morris did not abandon his expectation of privacy; rather the wallet was mislaid or lost. Once the Deputy searched the wallet without a warrant, Fourth Amendment rights were implicated. Thus, to find the search justified, the State must establish the existence of an exception to the warrant requirement. *Mickelson*, 906 P.2d at 1022.

■ In *Dickeson v. State*, 843 P.2d 606, 610 (Wyo.1992), we stated that the recog-

nized exceptions to warrantless searches and seizures that may be invoked include:

1) search of an arrested suspect and the area within his control; 2) a search conducted while in hot pursuit of a fleeing suspect; 3) a search and/or seizure to prevent the imminent destruction of evidence; 4) a search and/or seizure of an automobile upon probable cause; 5) a search which results when an object is inadvertently in the plain view of police officers while they are where they have a right to be; 6) a search and/or seizure conducted pursuant to consent; and 7) a search which results from an entry into a dwelling in order to prevent loss of life or property.

(Quoting *Ortega v. State,* 669 P.2d 935, 940–41 (Wyo.1983).) The record discloses that none of these exceptions apply to this case. Morris was never under arrest. The Deputy testified at the suppression hearing that he had no intention of making an arrest but was only trying to help Morris. Accordingly, no probable cause or reasonable suspicion existed to search Morris' wallet. Furthermore, the plain view exception does not apply because, to invoke this exception, the items being searched or seized must appear to the officer to be possible evidence. *Starr v. State,* 888 P.2d 1262, 1265 (Wyo.1995); *Jones v. State,* 902 P.2d 686, 692 (Wyo.1995). Here the Deputy testified that his sole justification for searching the wallet was to see if anything was missing and to see if he could find any information to aid Morris. The folded piece of paper containing the illegal drug was contained within the wallet and thus was not in plain view to the Deputy. Additionally, the record establishes that Morris did not consent to the Deputy searching his wallet; the only consent that can be said to have been given by Morris was the consent, via acquiescence, to the Deputy retrieving the wallet. This consent was limited in purpose and scope. *Amin v. State,* 695 P.2d 1021, 1025 (Wyo.1985).

Having found none of these exceptions applicable, we address the State's argument that the search of the wallet was justified by the Deputy's community caretaker function, *i.e.,* to ensure Morris' safety and welfare due to his disoriented condition and incapacity to provide meaningful assistance in finding someone to come to his aid. In *Wilson v. State,* 874 P.2d at 221, we discussed an officer's community caretaker function, stating that this function, as outlined in *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973), permits police to act in a manner that enhances public safety. To justify this community caretaker function and establish the reasonableness of any search and seizure that results, specific and articulable facts must be present. *Wilson,* 874 P.2d at 221. Therefore, the totality of the circumstances must be examined at the inception of the officer's action to determine whether the search and/or seizure was reasonably related in scope to the circumstances.

In *Dombrowski,* the Court approved the search of a car trunk after the drunken driver had been involved in an accident which left him comatose. The Court reasoned that the local police were justified in searching the trunk pursuant to their community caretaking function because the driver was an off-duty police officer from another jurisdiction and local police reasonably believed the officer's service revolver would be a hazard if left in the trunk of the abandoned car. 413 U.S. at 446–47, 93 S.Ct. at 2530–31. Under the circumstances, with the driver comatose and the possibility of his revolver being in the trunk, the search of the trunk was reasonable to ensure public safety.

In *Wilson,* we held that the police officer's initial encounter with Wilson was reasonable and justified. We stated that the police officer's observation of specific and articulable facts, Wilson's lunging walk with a severe limp, reasonably justified a brief inquiry into his condition and the possible cause, such as whether Wilson was a victim of criminal conduct. 874 P.2d at 221. However, we also held that the police officer's community caretaker function did not justify the officer seizing Wilson for the purpose of completing a NCIC and local warrants check. *Id.,* at 224–25. We found that the officer admitted in his testimony that at no time did he possess any articulable facts sufficient to create a reasonable suspicion of past or present criminal conduct, and therefore the seizure was im-

permissible as a matter of law and Wilson's Fourth and Fourteenth Amendment rights were violated. *Id.*

The analysis of the community caretaker function is fact based, with the emphasis on what is reasonable under the circumstances. In this case the record discloses that Morris was alert and conscious enough to ask questions, answer questions, and keep his faculties about him. In fact, Morris was functioning well enough to give the Deputy a phone number to call and the name of the person he was calling. The Deputy testified that he reached an answering machine with the same name as that given by Morris. The Deputy also testified that Morris was sitting in a chair in the interview room smoking a cigarette when the Deputy left him. Thus, the record is devoid of evidence that Morris was incapacitated or unconscious when the Deputy left to retrieve Morris' wallet.

The Deputy testified that when he found Morris' wallet on the floorboard of his patrol vehicle, he opened the wallet to see if Morris' fifty dollar bill had fallen out. It was neither reasonable nor necessary for the Deputy to search the wallet pursuant to his community caretaker function to ensure Morris' money was in the wallet. The Deputy further testified that after verifying that Morris' money was in the wallet, he decided to search the rest of the wallet to see if Morris had mistakenly passed over his driver's license and to see if he could find any other information that would aid Morris. Unlike *Dombrowski,* the record fails to show that an emergency situation existed or to establish any specific and articulable facts to justify the search pursuant to an officer's community caretaker function.

We hold that, under the totality of the circumstances, it was unreasonable and unnecessary for the Deputy to have searched Morris' wallet without first obtaining a warrant. Accordingly, Morris' Fourth and Fourteenth Amendment rights were violated.

Having found that the warrantless search of Morris' wallet was unreasonable and illegal, we need not address whether the search of the folded piece of paper contained within the wallet was an unreasonable and illegal search.

## C. Fruit of the poisonous tree and the exclusionary rule

The methamphetamine discovered by the Deputy during his illegal search of Morris' wallet provided reasonable suspicion and probable cause to confront Morris and inquire whether Morris had anything else illegal on his person. This confrontation, under color of authority, prompted Morris to produce a pipe and bag of marijuana. Subsequently, Morris was arrested and, during booking, additional packets of methamphetamine were discovered. Based upon this discovered evidence, a search warrant to search Morris' residence was executed. Morris sought to have all of this evidence suppressed.

In *Roose v. State,* 759 P.2d at 481, we stated that

> if the initial search is held improper, not only the evidence obtained by such search but everything which becomes accessible to the prosecution by reason of the initial search would be inadmissible as "a fruit of the poisonous tree."

(*Quoting Goddard v. State,* 481 P.2d 343, 345 (Wyo.1971).) In this case, all of the evidence obtained became accessible to the prosecution only as a result of the illegal initial search and, therefore that evidence constitutes fruit of the poisonous tree. *Id.; Brown v. State,* 738 P.2d 1092, 1097 (Wyo.1987). The illegal search of Morris' wallet, " 'bar[s] from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion.' " *Wilson,* 874 P.2d at 225 (*quoting Wong Sun v. United States,* 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)).

We conclude that the exclusionary rule must be applied in this case. *See Brown,* 738 P.2d at 1097; *Wilson,* 874 P.2d at 225. The conduct of the Deputy in this case amounted to an attempt to circumvent Art. I, § 4 of the Wyoming Constitution, and we find the exclusionary rule to be particularly appropriate here.

## CONCLUSION

The search of Morris' wallet was an unreasonable and illegal search, in violation of

Morris' Fourth and Fourteenth Amendment rights. Accordingly, the district court was clearly erroneous in denying Morris' motion to suppress.

Reversed and remanded.

THOMAS, Justice, dissenting.

I cannot discern that anything the deputy sheriff did in this case was unreasonable or was not sanctioned by sound legal authority. Consequently, I would affirm Morris' conviction, and I must dissent from the contrary ruling by the majority of the Court. The focus in this case must be upon Morris' condition and the situation confronting the deputy sheriff, not simply upon the fact that a wallet was examined.

The approach of the Illinois Supreme Court is far more sound:

We cannot agree with this line of reasoning, for as indicated by the great number of search and seizure cases before the courts today there is no iron-bound rule that governs all such cases regardless of circumstances. The constitutional prohibition is against unreasonable searches and seizures and what is reasonable or unreasonable is dependent upon the facts of each individual case. We have no quarrel with any of the cases cited by the defendant but no one of them meets the facts of this case. Here the officers were summoned to investigate the circumstances involving a distressed person. They found him in a stupor, not intoxicated apparently, for there was no odor of alcohol. But he was totally disoriented and incoherent, unable to answer their questions as to his condition or identity. For all they knew he may have been a diabetic in shock or a distressed cardiac patient. The officers were faced with an entirely different set of facts requiring different guide lines. This was an emergency situation where the welfare of the individual was at stake.

This court has recently discussed a similar emergency situation in *People v. Smith,* 44 Ill.2d 82, 254 N.E.2d 492 [ (1969) ]. Though not determinative of the case, we commented that it was reasonable and appropriate for the police to remove a wallet from the clothing of a seriously wounded and semiconscious person and that the damaging evidence contained therein was admissible in evidence at his later trial. We stated that it was reasonable to consider that the wallet might provide information of value in the handling of the wounded man, *e.g.,* information concerning his blood type, being a diabetic, being unable to tolerate certain medications or anesthetics, religious affiliation, and that, in fact, had the officer failed to secure the wallet, a criticism of his professional conduct could not be lightly dismissed. We concluded that under such circumstances the constitutional rights of defendant would not be infringed.

Other jurisdictions have determined the specific point here at issue. In *People v. Gonzales,* 182 Cal.App.2d 276, 5 Cal.Rptr. 920 [ (1960) ], a case involving a charge of illegal possession of narcotics, it was held that where defendant was found either unconscious or nearly so with a knife wound, a search made for identification of defendant was reasonable and lawful and that the seizure of a package of marijuana from his pants pocket was not a violation of his constitutional rights. The court stated that after finding a man in defendant's condition any alert and conscientious officer would be put on inquiry and the first step in the inquiry would be to clearly identify the victim, and that failure to do so would subject him to sever censure. **It was stated further that reasonableness is not a mere matter of abstract theory but a practical question to be determined in each case in the light of its own circumstances.** In *United States v. Hickey,* D.C., 247 F.Supp. 621 [ (1965) ], it was held that where an accused was so drunk when found in an alley that it was impossible for the police to be certain that he had even given them his correct name and address, a search of defendant to obtain his wallet was justified. The court stated that it was not only the right but the duty of the arresting officer to search an arrested person if necessary to determine his true identity and that where evidence of a greater offense is uncovered in such a search incident to his arrest for

intoxication such evidence is admissible against him in his trial on the greater offense.

*People v. Smith,* 47 Ill.2d 161, 265 N.E.2d 139, 140–41 (1970) (emphasis added).

In that case, the officers were seeking identification on the defendant's person and discovered marijuana in his back pocket. The court refused to suppress the evidence.

Other courts have ruled consistently. *Vauss v. United States,* 370 F.2d 250 (D.C.Cir.1966); *People v. Gomez,* 229 Cal. App.2d 781, 40 Cal.Rptr. 616 (1964); *State v. Auman,* 386 N.W.2d 818 (Minn.Ct.App.1986); *Missouri v. Miller,* 486 S.W.2d 435 (Mo. 1972); *Perez v. State,* 514 S.W.2d 748 (Tex. Crim.App.1974). *See United States v. Wilson,* 524 F.2d 595 (8th Cir.1975), *cert. denied,* 424 U.S. 945, 96 S.Ct. 1415, 47 L.Ed.2d 351 (1976); *Gilbert v. State,* 289 So.2d 475 (Fla. Dist.Ct.App.1974), *cert. denied,* 294 So.2d 660 (Fla.1974).

There can be no question that the community caretaking function is an appropriate role for law enforcement officers. In the AMERICAN BAR ASSOCIATION STANDARDS FOR CRIMINAL JUSTICE, the function is described:

**Complexity of police task**

\* \* \* \* \* \*

(b) To achieve optimum police effectiveness, the police should be recognized as having complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses. Such other police tasks include protection of certain rights such as to speak and to assemble, participation either directly or in conjunction with other public and social agencies in the prevention of criminal and delinquent behavior, maintenance of order and control of pedestrian and vehicular traffic, resolution of conflict, and assistance to citizens in need of help such as the person who is mentally ill, the chronic alcoholic, or the drug addict.

AMERICAN BAR ASSOCIATION STANDARDS FOR CRIMINAL JUSTICE § 1–1.1(b) (2d ed. 1986 Supp.).

**Major current responsibilities of police**

In assessing appropriate objectives and priorities for police service, local communities should initially recognize that most police agencies are currently given responsibility, by design or default, to:

\* \* \* \* \* \*

(c) aid individuals who are in danger of physical harm;

\* \* \* \* \* \*

(f) assist those who cannot care for themselves;

\* \* \* \* \* \*

(k) provide other services on an emergency basis.

AMERICAN BAR ASSOCIATION STANDARDS FOR CRIMINAL JUSTICE § 1–2.2 (2d ed. 1986 Supp.).

After quoting from the STANDARDS, LaFAVE states the proposition unequivocally:

If a reasonable and good faith search is made of a person for such a purpose, then the better view is that evidence of crime discovered thereby is admissible in court.

2 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 5.4(c), at 525 (2d ed. 1987) (footnote omitted). If the person of a defendant can be searched under these circumstances, a wallet in the person's possession and casually left in the police vehicle surely enjoys no greater protection. This must be especially true when the defendant apparently acquiesced in the examination by the officer.

The foregoing authorities, following what is sometimes referred to as the emergency doctrine, are far more persuasive to me than the two cases from the Oregon Court of Appeals relied upon by the majority. *State v. Paasch,* 117 Or.App. 302, 843 P.2d 1011 (1992), and *State v. Morton,* 110 Or.App. 219, 822 P.2d 148 (1991), both involved lost property, a wallet and a purse, and both involved a continuation of the search after identification had been found. The same factual discrepancy is found in *State v. May,* 608 A.2d 772 (Me.1992).

The facts of this case involve far more than a lost wallet. If we accept the view of the facts most favorable to the State, as we are bound to do, Morris was far less competent

and coherent than the majority depicts him. He kept lapsing in and out of consciousness; was startled and confused when he recovered consciousness; was confused and disoriented; and even stated he thought he had lost the T-shirt he was wearing some two years previously. More pertinent to these facts is the case of *State v. Newman*, 49 Or.App. 313, 619 P.2d 930 (1980), in which the Court of Appeals of Oregon reversed a pretrial order suppressing evidence obtained from a search of the defendant's purse. The defendant was discovered in an apparently intoxicated condition, but the court concluded there was no medical emergency. It held, however, that in evaluating one of his options, that of taking Newman home, the officer needed her home address, or the name and number of someone to call. The Supreme Court of Oregon reversed the Court of Appeals, limiting the question to: "Can the police without a warrant in a noncriminal and nonemergency situation search the property of an intoxicated person for identification at the time the person is taken into custody *for transportation to a treatment or holding facility?*" *State v. Newman*, 292 Or. 216, 637 P.2d 143, 145–46 (1981), *cert. denied*, 457 U.S. 1111, 102 S.Ct. 2915, 73 L.Ed.2d 1321 (1982). I find LaFave's critique of this decision to be apt:

> The curious approach of the Oregon Supreme Court in reversing does not cast any doubt upon the wisdom of the language quoted in the text. Ignoring the fact that the officer acted for the purpose of gaining facts upon which he could decide which alternative disposition would be appropriate, the court misstated the issue as being whether "it was necessary for the police officer to know the name of the person that he was going to transport to the treatment or holding facility."

2 Wayne R. LaFave, Search and Seizure § 5.4(c), at 526 n. 37 (2d ed. 1987).

Similarly, in this case, after articulating the fact that the deputy sheriff asked Morris whether there might be found in his wallet any phone numbers of friends, the majority simply ignores the reason for looking for the wallet in the vehicle was so that prospect might be investigated. Instead, the majority treats the case as simply a lost-wallet case from that point forward. The majority acknowledges the community caretaker function, but does not go forward with that analysis as the courts upon which I rely have done.

We recognized the very function at issue here in *Roose v. State*, 759 P.2d 478, 483 (Wyo.1988), when we said:

> While it is clear the inspection of an arrestee's wallet may be proper under an incident-to-arrest rationale, the examination also may be properly conducted under an inventory search rationale or to provide assistance to the police in ascertaining or verifying the arrestee's identity. *Illinois v. Lafayette* [462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983)], supra; *State v. Brown*, 291 Or. 642, 634 P.2d 212 (1981); 2 LaFave, Search & Seizure, supra. As stated in the case of *State v. Brown*, 291 Or. 642, 634 P.2d at 219, the Oregon Supreme Court stated that "[a] search of person is construed to include clothing and the opening of small closed containers like cigarette boxes and wallets." Therefore, it was reasonable for the officer to take appellant's wallet and search its contents.

Even though there might be inventory justification for the examination of Morris' wallet, I am satisfied that the examination was accomplished "to provide assistance to the police in ascertaining or verifying" Morris' identity and to identify a friend or relative who might assist him. *Roose*, 789 P.2d at 483.

No error was committed by the trial court in admitting the evidence taken from Morris' wallet, and his conviction should be upheld.