2012 WY 14

**Joseph Randall OWENS, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. S–11–0184.**

Supreme Court of Wyoming.

Feb. 6, 2012.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Olson, Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel.

Representing Appellee: Gregory A. Phillips, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Stewart M. Young, Director, and Joshua B. Taylor, Student Director, Prosecution Assistance Program, University of Wyoming, College of Law.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellant, Joseph Randall Owens, entered a conditional guilty plea to felony possession of methamphetamine in violation of Wyo. Stat. Ann. § 35–7–1031(c)(ii). He reserved the right to appeal the constitutionality of the search that resulted in discovery of the methamphetamine. We affirm.

### ISSUE

[¶ 2] Appellant presents the following issue:

Should the motion to suppress evidence seized in a warrantless search of Appellant's containers have been granted?

### FACTS

[¶ 3]   An officer of the Gillette Police Department was dispatched to a local Gillette motel in response to a 911 call reporting a medical emergency.   The officer, who was also a trained emergency medical technician, arrived before any medical personnel and was led to Appellant's motel room by the woman who had reported the emergency. The woman was a friend of Appellant's and had been staying with her children in an adjoining room.   She had gone to Appellant's room earlier that morning to wake Appellant so they could check out of the motel.   Soon after she roused Appellant, however, he collapsed onto the floor.   When she asked Appellant whether she should call 911, Appellant "said yes, that he didn't want to die."

[¶ 4]   When the officer entered Appellant's room, he found Appellant on his back on the floor, convulsing.   His eyes were extremely wide, and he was unable to focus. Appellant did not respond to the officer's attempts to communicate with him.   The officer asked Appellant's friend if she knew anything about Appellant's condition, but she was unable to provide any pertinent information.   Emergency medical personnel arrived as the officer was attempting to gather information from Appellant's friend.

[¶ 5]   As the medical personnel tended to Appellant, the officer looked around the room in an attempt to determine the cause of Appellant's condition.   The officer noticed a backpack on the bed.   He opened the front compartment and found a black plastic case. Inside the case, the officer found transparent pill bottles lacking prescription labels.   Noticing that the bottles contained a substance that was not in pill form, the officer opened the bottles and discovered that the substance appeared to be methamphetamine.   The officer found a second case in another compartment of Appellant's backpack that contained a triangular metal dish and a spoon.   The

officer informed the medical personnel of what he had found, which prompted them to begin treating Appellant for a suspected drug overdose.

[¶ 6]   After Appellant was taken to the hospital, the officer secured Appellant's motel room.   At some point prior to applying for a search warrant, the officer entered Appellant's friend's room and retrieved a cardboard box from a trash can.[1]   The officer made no reference to this evidence in his affidavit supporting the warrant to search Appellant's motel room.   After a search warrant was authorized, the officer returned to Appellant's motel room and seized evidence of drug use from a duffel bag, including a pipe, multiple syringes, and a spoon.

[¶ 7]   Appellant was charged with possession of methamphetamine in violation of Wyo. Stat. Ann. § 35–7–1031(c)(ii).   He filed a motion to suppress the evidence seized as a result of the officer's warrantless search. After a hearing, Appellant's motion was denied.   Appellant then entered a conditional guilty plea, reserving the right to challenge the denial of his motion to suppress.   The district court imposed a sentence of two to four years, which was suspended in favor of a four-year probation term.   This appeal followed.

### STANDARD OF REVIEW

[¶ 8]   When reviewing the denial of a motion to suppress, we defer to the district court's factual findings unless they are clearly erroneous.   We view the evidence in the light most favorable to the district court's determination because that court had the opportunity to hear the evidence and assess the credibility of witnesses.   We review *de novo* the ultimate determination regarding the constitutionality of a particular search or seizure.   *Lovato v. State,* 2010 WY 38, ¶ 11, 228 P.3d 55, 57 (Wyo.2010).

### DISCUSSION

[¶ 9]   Appellant contends that evidence of methamphetamine seized from his

---

1.   According to the officer's testimony, he seized the box because, "It had a little burn mark up in the corner of the box; that along with the spoon that I found, looked like it had been from that spoon."

backpack should have been suppressed because it was discovered during an unlawful search. He claims that the search of his backpack was unreasonable because there was no connection between his medical emergency and the search. Under the circumstances presented, however, we find that the search was reasonable.

[¶ 10] The Fourth Amendment to the United States Constitution and Article 1, § 4 of the Wyoming Constitution protect individuals from unreasonable searches and seizures. *See Pena v. State*, 2004 WY 115, ¶ 29, 98 P.3d 857, 870 (Wyo.2004). A search conducted without a warrant is presumptively unreasonable. *Morris v. State*, 908 P.2d 931, 935 (Wyo.1995). This presumption, however, is not absolute. *Id.*, 908 P.2d at 935. As the Supreme Court has noted, "When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." *Illinois v. McArthur*, 531 U.S. 326, 330, 121 S.Ct. 946, 949, 148 L.Ed.2d 838 (2001). When a search is conducted without a warrant, the State has the burden to show that the search was reasonable. *Morris*, 908 P.2d at 935.

[¶ 11] In *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), the Supreme Court recognized the justification for searches in emergency situations:

We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. *Cf. Michigan v. Tyler*, [436 U.S. 499, 509–510, 98 S.Ct. 1942, 1949–1950, 56 L.Ed.2d 486 (1978) ]. "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency."

*Wayne v. United States*, 115 U.S.App. D.C. 234, 241, 318 F.2d 205, 212 (opinion of Burger, J.).

*Id.*, 437 U.S. at 392–93, 98 S.Ct. at 2413 (footnotes omitted). The Court noted, however, that "a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.'" *Id.*, 437 U.S. at 393, 98 S.Ct. at 2413 (quoting *Terry v. Ohio*, 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968)).

[¶ 12] We have previously recognized that a warrantless search in an emergency situation may be justified where a law enforcement officer is acting to enhance public safety pursuant to a "community caretaker function." In *Morris*, 908 P.2d at 936, we summarized this justification as follows:

In *Wilson v. State*, 874 P.2d [215,] 221 [ (Wyo.1994) ], we discussed an officer's community caretaker function, stating that this function, as outlined in *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973), permits police to act in a manner that enhances public safety. To justify this community caretaker function and establish the reasonableness of any search and seizure that results, specific and articulable facts must be present. *Wilson*, 874 P.2d at 221. Therefore, the totality of the circumstances must be examined at the inception of the officer's action to determine whether the search and/or seizure was reasonably related in scope to the circumstances.

The community caretaker justification for a warrantless search recognizes the various duties of a police officer, some of which are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 441, 93 S.Ct. at 2528. As noted by one respected treatise in a discussion of warrantless searches for purposes other than law enforcement,

The police have "complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses"; by design or default, the police are also expected to "reduce the opportunities for the commission of some crimes through preventative patrol

and other measures," "aid individuals who are in danger of physical harm," "assist those who cannot care for themselves," "resolve conflict," "create and maintain a feeling of security in the community," and "provide other services on an emergency basis."

3 Wayne R. LaFave, *Search and Seizure* § 6.6, at 451 (4th ed. 2004) (quoting ABA Standards for Criminal Justice, §§ 1–1.1, 1–2.2 (2d ed. 1980)).

[¶ 13] In *Morris,* we considered, and ultimately rejected, the State's argument that the community caretaker function justified a law enforcement officer's warrantless search of the appellant's wallet. Nonetheless, our review of the present case is guided by a comparison to the facts in *Morris.* In that case, a deputy sheriff responded to a report that the appellant was sleeping in the backyard of a private residence. *Id.,* 908 P.2d at 933. When the deputy woke the appellant, he was unsteady and disoriented. After the appellant returned to the sheriff's office with the deputy so that he could call someone to come get him, he discovered that he had lost his wallet. The deputy recalled seeing the wallet in his patrol car and offered to search the vehicle for it. Upon locating the wallet on the floorboard of his vehicle, the deputy proceeded to search the wallet and found a tightly folded piece of paper containing a white powdery substance that was later identified as methamphetamine. *Id.,* 908 P.2d at 933–34. In light of the fact that the appellant "was alert and conscious enough to ask questions, answer questions, and keep his faculties about him," and the fact that the appellant "was sitting in a chair in the interview room smoking a cigarette when the Deputy left him," we found no evidence to suggest that the appellant was incapacitated or unconscious when the deputy left to retrieve his wallet. *Id.,* 908 P.2d at 937. Accordingly, we decided that "the record fails to show that an emergency situation existed or to establish any specific and articulable facts to justify the search pursuant to an officer's community caretaker function." *Id.*

[¶ 14] In this case, the responding officer was presented with an emergency situation when, upon entering Appellant's motel room, he found Appellant convulsing on the floor. Appellant was unable to communicate with the officer and did not respond to the officer's attempts to gain his attention. During the encounter, Appellant's eyes were extremely wide and periodically rolled to the back of his head. The officer was unable to gather any pertinent information about Appellant's condition from Appellant's acquaintance. Under these circumstances, it was reasonable for the officer to search Appellant's backpack, as well as the containers found therein, in an attempt to aid Appellant. Despite the subsequent arrival of emergency medical personnel, it was reasonable for the officer, who had also received training as an emergency medical technician, to seek identification indicating a specific medical condition, emergency medication to alleviate Appellant's seizure, or substances that may have contributed to Appellant's condition. The officer's discovery of methamphetamine prompted the medical technicians to treat Appellant for a suspected drug overdose. Based on the totality of the circumstances, we find that the State satisfied its burden of establishing specific and articulable facts showing that the search was justified pursuant to the officer's community caretaker function.

[¶ 15] Appellant asserts that the officer's seizure of a cardboard box from his friend's motel room shows that the officer engaged in a "general exploratory search" that was "related to the emergency only as a matter of fortuitous opportunity." We agree that the officer's search of the adjoining motel room was unrelated to the exigencies created by Appellant's emergency. However, the fact that the officer retrieved a cardboard box from the neighboring motel room does not undermine our conclusion that the officer's search of Appellant's backpack was objectively reasonable. The search of the trash can in the neighboring room, conducted after Appellant had been transported to the hospital, has no bearing on the reasonableness of the officer's search at the time of Appellant's emergency. Further, the issuance of the search warrant for Appellant's room was not in any measure based on evidence discovered during the officer's search

of the neighboring room. The officer's affidavit in support of the warrant to search Appellant's motel room makes no reference to his search or observations in the adjoining room. While the facts may present a question as to whether the search in the adjoining room was lawful with respect to Appellant's friend's Fourth Amendment rights, Appellant has not demonstrated that he had a reasonable expectation of privacy in his friend's room and, as a result, he does not have standing to challenge that search. *Miller v. State*, 2009 WY 125, ¶ 24, 217 P.3d 793, 801 (Wyo.2009).

[¶ 16]   Affirmed.